[Crim. No. 22200. June 3, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
EDDIE RAY COLE, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Paul Bell, Deputy State Public Defender, and Joel Kriger for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Patricia D. Benke and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROUSSARD, J.**—Penal Code section 12022.7[1] provides that "Any person who, with the intent to inflict such injury, *personally* inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and

---

[1] All statutory references are to the Penal Code. In its entirety, section 12022.7 provides: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted.

"As used in this section, great bodily injury means a significant or substantial physical injury.

"This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. The additional term provided in this section shall not be imposed unless the fact of great bodily injury is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted. . . ." (Italics added.) The issue in the present appeal is whether appellant, who blocked the victim's escape and directed the attack but did not physically strike the victim, may receive an enhanced sentence pursuant to this section. We have concluded that the Legislature intended to impose an additional penalty for causing great bodily injury only on those principals who perform the act that directly inflicts the injury, and that one who merely aids, abets, or directs another to inflict the physical injury is not subject to the enhanced penalty of section 12022.7.

Greg Johnson, a licensed gun dealer, fell asleep watching television on the couch of his living room after cleaning six firearms on the living room coffee table. He was awakened in the early hours of the morning by two individuals, identified as appellant Cole and his brother-in-law, Byron Jackson. They were holding weapons Johnson recognized as part of the collection he had been cleaning earlier. Johnson knew there was no ammunition in the living room and believed that the guns were not loaded. When he was slow to react to an order to turn around, Cole ordered Jackson to kill Johnson. In response to the command, Jackson swung a rifle at Johnson, hitting him three times in the arm and once in the head. The laceration to Johnson's scalp later required 15 stitches. Appellant did not strike Johnson, but during the attack he pointed an unloaded rifle at Johnson and blocked his escape. After receiving the blow to the head, Johnson "straight-armed" the assailants and ran past them into a bedroom. At that point, appellant apparently fled the house, but Jackson, still carrying the unloaded rifle, pursued Johnson into the bedroom. Johnson ran to a closet to attempt to grab and load a pistol, but before he could load the gun, Jackson seized Johnson. In the ensuing struggle Johnson disarmed Jackson and struck him with the butt of the rifle, causing Jackson's mouth to bleed. Jackson then grabbed the unloaded pistol, pulled the trigger four times, and fled the room.

Soon after the attack, police officers, led by a trail of blood splatters, arrested Jackson and Cole in Cole's apartment with the weapons.

Appellant was convicted of robbery (§ 211), burglary (§ 459), and grand theft (§ 487, subd. 3), with enhancements of the sentence pursuant to sections 12022.5 and 12022.7.

■ Cole appeals from the judgment of conviction. He contends that even if he directed the attack and blocked the victim's escape, he did not actually strike the victim, thus he cannot receive an enhanced sentence pursuant to section 12022.7. In addition, appellant contends that the trial court erred in permitting him to be impeached by evidence of a 1976 "theft" conviction; that the trial judge placed undue pressure on the jury to reach a verdict; and that the grand theft conviction must be reversed because it is a necessarily included lesser offense of the crime of robbery. First, we address appellant's claim that his conduct does not fall within the provisions of section 12022.7.

In our opinion, the meaning of the statutory language is clear: the enhancement applies only to a person who himself inflicts the injury. "When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) It is doubtful that the Legislature could have enacted the statute in question more tersely to express the intended limitation on the class of individuals who may be exposed to an enhanced sentence for inflicting great bodily injury. Among the several dictionary definitions of "personally," we find the relevant meaning clearly reflecting what the Legislature intended: "done in person without the intervention of another; direct from one person to another." (Webster's New Internat. Dict. (3d ed. 1961).) No other expression could have more clearly and concisely expressed what we interpret to be the plain meaning of the Legislature: that the individual accused of inflicting great bodily injury must be the person who directly acted to cause the injury. The choice of the word "personally" necessarily excludes those who may have aided or abetted the actor directly inflicting the injury.

"We have declined to follow the plain meaning of a statute only when it would inevitably have frustrated the manifest purposes of the legislation as a whole or led to absurd results." (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) Neither reason for departing from the plain meaning of the statutory language exists in this case. The purpose of the statute is to deter the infliction of great bodily injury. (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 576 [146 Cal. Rptr. 859, 580 P.2d 274]; *People* v. *Johnson* (1980) 104 Cal.App.3d 598, 608 [164 Cal.Rptr. 69]; *People* v. *Walls* (1978) 85 Cal.App.3d 447, 453 [149 Cal.Rptr. 460].) A construction limiting its scope to the person who himself inflicts the injury serves that purpose; each member

of a criminal undertaking will know that, regardless of the urgings of his confederates, if he actually inflicts the injury he alone will pay the increased penalty.

In a moral sense, one could argue that a person who directs infliction of injury is as culpable as the person who does the act. Thus it may well be that drawing a slightly different line—to include persons who direct the infliction of injury or who aid such acts—would also accomplish the legislative purpose. Such an expansion of the statutory language to include persons other than the one who actually inflicts the injury would, however, inevitably pose difficult questions in future cases in which the charged accomplice is further removed from the act causing the injury. In any event, the distinction between the person who actually inflicts the injury and the person who does not, is clearly consonant with the legislative purpose, and cannot be described as leading to absurd consequences. Expansion of the penalty to include those who merely aid in the infliction of the injury would frustrate the intent of the Legislature to impose the enhancement only on those who "personally" inflict great bodily injury.

To aid in our understanding of the legislative intent, we shall review the development of other enhancement statutes *in pari materia* with section 12022.7. As they read today, sections 12022, 12022.5 and 12022.7 each add enhanced penalties for the commission of certain types of aggravated conduct that threatens or results in injury to the victim of a felony. Section 12022, subdivision (a)[2] provides an enhanced penalty of one year for a person convicted "who is armed with a firearm in the commission or attempted commission of a felony ... whether or not such person is personally armed with a firearm." Section 12022,

---

[2]Section 12022 provides: "(a) Any person who is armed with a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of one year, unless such arming is an element of the offense of which he was convicted. This additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not such person is personally armed with a firearm.

"(b) Any person who personally uses a deadly or dangerous weapon in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of one year, unless use of a deadly or dangerous weapon is an element of the offense of which he was convicted."

subdivision (b) provides an added term of one year for "[a]ny person who personally uses a deadly or dangerous weapon in the commission or attempted commission of a felony...." Section 12022.5[3] provides a two-year enhancement for "[a]ny person who personally uses a firearm in the commission or attempted commission of a felony...." Finally, section 12022.7 establishes a three-year additional term for "[a]ny person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony...." Each of the sections is inapplicable to crimes in which the particular conduct prohibited is an element of the offense.

The courts and the Legislature have been confronted with two recurring problems regarding the scope of the enhancement statutes: the first is the definition of the types of crimes to which the statute applies; the other, presented by this case, is the definition of the category of persons liable for the increased penalty. As we shall see, a brief history of the judicial decisions interpreting the enhancement statutes, and the legislative response to those decisions, supports our interpretation of the clear limitation on the class of individuals subject to the increased penalty of section 12022.7.

Cases dealing with the problem of the category of persons subject to the enhancement of section 12022 had limited its application to those who were themselves armed during the commission of the felony. (See *People v. Hicks* (1971) 4 Cal.3d 757, 765-766, fn. 4 [94 Cal.Rptr. 393, 484 P.2d 65]; *People v. Snyder* (1969) 276 Cal.App.2d 520, 526-527 [80 Cal.Rptr. 822].) When this court in *People v. Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], held that section 12022 was not intended to apply to those cases where being armed was a necessary element of the crime, the Legislature responded by enacting section 12022.5 (Stats. 1969, ch. 954, § 1), to be applied "even in those cases where the use of a weapon is an element of the offense." (See *People v. Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024].)

---

[3]Section 12022.5 provides: "Any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of two years, unless use of a firearm is an element of the offense of which he was convicted.

"The additional term provided by this section may be imposed in cases of assault with a deadly weapon under Section 245."

In *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306], we held that under section 12022.5, a defendant must himself use a firearm in the commission of a felony if he is to be subjected to the enhanced penalty provided by that statute, even though the statute contained no such explicit limitation at that time. Defendant was charged with murder and an enhancement for use of a firearm. The evidence adduced at trial showed that a witness heard a loud noise sounding like a gunshot, and then saw the defendant and two other men running from where the sound originated. A few moments later, an officer heard over the police radio that the three suspects were running to a described area. The officer drove his patrol car to that area and saw the defendant run into an alley and drop an object. The defendant ran out of the alley and was walking on the street when stopped by the officer. After the defendant was taken into custody, the officer recovered a holstered revolver from the alley, later established to be the murder weapon. No fingerprints were found on the revolver or holster. The trial judge instructed the jury in effect that "it need not be proved that the defendant physically used the gun so long as the jury was satisfied that someone during the perpetration of the offense did use the weapon." (*Walker, supra*, 18 Cal.3d at p. 243.)

This court reviewed the legislative history of section 12022.5 to determine the definition of the class of individuals to whom the statute could be applied. We concluded that the only substantive change occurring when the Legislature enacted section 12022.5 was to provide a limited increase in the types of felonies to which the provision is applicable. *Walker* found no legislative intent to enlarge the applicability of section 12022.5 to additional categories other than those who themselves use the firearm. (*Id.*, at p. 241.) Thus, *Walker* rejected the proposition that a mere aider and abettor in the commission of the crime could be subject to the increased penalty when he did not personally use the firearm.

In addition to the legislative history of section 12022.5, *Walker* also looked to the basis upon which derivative liability on some person other than the actor is to be applied. It found such basis in section 31,[4]

[4]Section 31 provides: "*Who are principals.* All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, lunatics or idiots, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed."

"which fixes responsibility on an aider and abettor for a crime personally committed by a confederate. But the statute which defines aiders and abettors as principals in the commission of a criminal offense does not also purport to impose additional derivative punishment grounded on an accomplice's personal conduct, as those statutes which provide for such increased punishment "'do not define a crime or offense but relate to the penalty to be imposed under certain circumstances.'" [Citations.] Hence the rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime." (*Walker, supra,* 18 Cal.3d at p. 242.)

The legislative response to *Walker* buttresses our interpretation of section 12022.7, rejecting the proposition that enhancement liability may be based on prohibited conduct performed by one other than the charged defendant. The 1977 amendment to section 12022.5 endorsed the judicial interpretation enunciated by *Walker,* so that the statute now explicitly requires that the defendant personally use a firearm before the provision is applicable. The 1977 amendments to sections 12022, 12022.5, and 12022.7 clearly differentiate between the class of persons who commit felonies *armed* with a firearm and those who *use* firearms, other dangerous weapons, or inflict great bodily injury. The language of section 12022, subdivision (a), "... whether or not such person is personally armed with a firearm," contrasted with section 12022, subdivision (b), "[a]ny person who personally uses a deadly or dangerous weapon ...." demonstrates a legislative intent to draw the line of distinction at the actor who himself commits the prohibited conduct. Significantly, the 1977 amendments simultaneously added the "personally" requirement to sections 12022, subdivision (b), 12022.5, and 12022.7 (Stats. 1977, ch. 165, §§ 91, 92, 94, eff. June 29, 1977, operative July 1, 1977; see also *Review of Selected 1977 California Legislation* (1978) 9 Pacific L.J. 281, 470-472.) In section 12022, subdivision (a) the Legislature has rejected limiting the class to those who are actually armed with a firearm while indorsing the restriction in sections 12022, subdivision (b), 12022.5 and 12022.7 as to those who themselves use deadly or dangerous weapons or inflict great bodily injury. In these amendments, we discern a legislative intent to uniformly limit the class of persons to whom the "use" and "great bodily injury" enhancements are applicable to those who themselves commit the prohibited conduct.

Two Court of Appeal opinions construing the predecessor to section 12022.7 appear on first blush to contradict our reading of the statute.

·However, when read in the light of the subsequent legislative changes, it becomes readily apparent that the cases no longer support a contrary interpretation. Indeed, the Legislature has rejected the holdings of those cases, opting instead for the more limited classification of individuals subject to the "great bodily injury" enhancement.

*People* v. *Collins* (1975) 44 Cal.App.3d 617 [118 Cal.Rptr. 864] involved a bank robbery committed by four armed men, all wearing ski masks, who pistol whipped several bank employees. Defendant was charged under former section 213,[5] which provided for a minimum term of 15 years for a conviction "in which defendant committed robbery, and in the course of commission of the robbery, with the intent to inflict such injury, inflicted great bodily injury on the victim of the robbery. . . ." The trial judge instructed the jury that a finding of great bodily injury may be made as to a robber who aids and abets the infliction of the injury even though he does not personally inflict the injury.[6] Affirming the conviction, the appellate court rejected the defendant's argument that the enhancement should be limited to those who personally inflict the injury. The court concluded that the legislative intent to augment the penalty would be frustrated if proof of personal assaultive action were required, especially in cases where identification of the particular individual who inflicted the injury is difficult. The court considered the specific intent requirement of the statute to be a sufficient safeguard against enhancement of the penalty for those aiders and abettors who have complicity in the robbery alone but not the specific

---

[5]Former section 213 provided: "Robbery is punishable by imprisonment in the state prison as follows:

"1. Robbery in the first degree for not less than five years.

"2. Robbery in the second degree, for not less than one year.

"The preceding provisions of this section notwithstanding, in any case in which defendant committed robbery, and in·the course of commission of the robbery, with the intent to inflict such injury, inflicted great bodily injury on the victim of the robbery, such fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial or if admitted by the defendant, defendant shall suffer confinement in the state prison from 15 years to life."

[6]The jury instruction declared: "A defendant who, in the commission of a robbery, knowingly and with specific intent to inflict great bodily injury either aids and abets in, or advices [*sic*] and encourages the infliction of great bodily injury by a co-perpetrator upon a victim, is equally responsible under the law with his co-perpetrator for the infliction of great bodily injury even though the defendant did not himself directly and actively inflict such injury.

"A person aids and abets in the infliction of great bodily injury if he knowingly and, with specific intent required, aids, promotes, encourages or instigates by act or advice or, by act and advice, the infliction of such injury."

intent to commit both the robbery and the infliction of great bodily injury. (*Id.*, at pp. 622-623.)

In *People* v. *Mills* (1977) 73 Cal.App.3d 539 [140 Cal.Rptr. 803], the court was confronted with a defendant convicted of first degree robbery and of inflicting great bodily injury. Appellant and another man attacked the victim. While the victim was down on the floor, the appellant kicked him in the legs and knees, and directed his confederate to "Cut him. Cut him," whereupon the confederate cut the victim's throat. The defendant claimed that under [former] section 213, he could not be found to have inflicted great bodily injury because he did not personally wield the knife that cut the victim's throat.

The jury was given the same instruction as that received by the *Collins* jury, that a finding of infliction of great bodily injury may be made as to an aider and abettor, even though he does not personally inflict the injury. The court rejected the argument that *Walker* changed the law regarding whether personally wielding the knife was required before a finding of infliction of great bodily injury could be made. *Mills* concluded that the distinction between former section 213 and section 12022.5 is that former section 213, "as interpreted by *Collins*, requires that the defendant specifically intend the injury." (*Mills, supra*, 73 Cal.App.3d 539, 544.) The court found that the evidence in that case supported the conclusion that the appellant specifically intended the injury, thus concluding that the legislative intent is "effectuated by holding the defendant liable to the increased penalty whether or not he personally wielded the instrument which inflicted the injury." (*Id.*)

Section 12022.7 was added to the Penal Code as part of the Uniform Determinate Sentencing Act of 1976, supplanting the specific great bodily injury provisions of sections 213, 264, and 461, and is applicable to all felonies except those in which infliction of such injury is necessarily included as an element of the offense. (*People* v. *Caudillo, supra*, 21 Cal.3d at pp. 580-581.) As we have seen, the 1977 amendments imposed a uniform limitation on the class of individuals subject to the "use" and "great bodily injury" enhancements. Because now both sections 12022.5 and 12022.7 contain the requirement that the defendant act "personally," the rationale of *Collins* and *Mills* can no longer support the proposition that an aider and abettor who does not personally inflict the great bodily injury can be held liable for the enhanced penalty. Indeed, the legislative changes express an intent to reject enhancement liability even in cases where the defendant directs the attack, or

otherwise manifests the specific intent to cause the injury. Since it is presumed that the Legislature was cognizant of the judicial construction of former section 213, broadly defining the class of persons subject to the great bodily injury enhancement, we can only conclude that in amending section 12022.7 in 1977 the Legislature intended to alter the law by requiring that the defendant act "personally" *in addition* to having the specific intent to inflict the injury. (See *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].)

In sum, we conclude that in enacting section 12022.7, the Legislature intended the designation "personally" to limit the category of persons subject to the enhancement to those who directly perform the act that causes the physical injury to the victim. The language of the statute is clear and unambiguous, our reading neither frustrates its purpose nor does it lead to absurd results. We have construed related statutes, sections 12022 and 12022.5, as limited to the actor who actually commits the prohibited conduct. The 1977 amendment to section 12022.7 expresses a legislative intent to endorse a uniform, restricted definition of the class of individuals subject to the enhanced penalty for the infliction of great bodily injury while rejecting the broad definition of the class that had been applied to the predecessor of section 12022.7.

■ Appellant next claims that the trial court erred in permitting him to be impeached by evidence of a 1976 robbery conviction, "sanitized" as one "involving theft." The prosecutor anticipated that appellant would present an alibi defense: that he had been at his apartment during the robbery and that appellant's brother-in-law, Jackson, brought the guns into the apartment. The prosecutor requested that he be allowed to raise the prior conviction to rebut the expected alibi by asking appellant to explain why he would permit Jackson to bring guns into his apartment, and for appellant himself to take one into his bedroom, knowing that it was a felony for him to possess concealable firearms. The prosecutor did not intend to impeach appellant by using the prior conviction as bearing on appellant's general credibility. To avoid the prejudice inherent in admitting a prior conviction for the same or substantially similar conduct, the court allowed the prosecutor to ask appellant if he had ever been convicted of a felony "involving theft." Knowing the court's ruling and the intent of the prosecutor, defense counsel brought out the fact of the prior conviction on direct examination in an attempt to lessen its impact in the minds of the ju-

rors. The prosecution dropped direct reference to the prior conviction, merely asking appellant whether he and Jackson knew that it was a felony for appellant to possess a concealable handgun. The record does not reflect that the prosecutor articulated to the jury his theory on rebutting the alibi. However, the jury was instructed "[t]he fact that a witness had been convicted of a felony, if such be a fact, may be considered by you only for the purpose of determining the credibility of that witness."

Evidence Code section 788 allows proof of a prior felony conviction for the purpose of impeaching the credibility of a witness. However, this right to impeach is tempered by Evidence Code section 352, which read together with section 788 gives the trial judge discretion to "exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice." (*People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1].) *Beagle* enumerated some of the more important factors for a trial court to consider in determining whether to exercise its discretion under Evidence Code section 352 to exclude the evidence if the probative value of the prior conviction is outweighed by the risk of undue prejudice.

First, the trial court must evaluate "whether the prior conviction reflects adversely on an individual's honesty or veracity; if it does, the degree of probative value of the conviction must be determined." (*People* v. *Fries* (1979) 24 Cal.3d 222, 226 [155 Cal.Rptr. 194, 594 P.2d 19].) Some felonies, such as perjury, are clearly connected with the issue of veracity; "others such as robbery and burglary, are somewhat less relevant; . . . ." (*People* v. *Rollo* (1977) 20 Cal.3d 109, 118 [141 Cal. Rptr. 177, 569 P.2d 771].) The second factor in weighing the probative value of the prior conviction in determining credibility is the nearness or remoteness in time of the prior conviction. (*People* v. *Beagle, supra*, 6 Cal.3d at p. 453.) Third is the "special and even more difficult problem [that] arises when the prior conviction is for the same or substantially similar conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe 'if he did it before he probably did so this time.'" (*People* v. *Beagle, supra*, at p. 453, quoting *Gordon* v. *United States* (D.C. Cir. 1967) 383 F.2d 936.) Finally, the court must consider the effect "if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions." (*Id.*)

In our view, the factor that tips the balance in this case against admission of the prior felony conviction is the fact that even as "sanitized," the prior conviction was identical to one of the charges for which appellant was on trial. In *People* v. *Fries, supra,* 24 Cal.3d 222, 233, this court held that the trial court erred in admitting a prior robbery conviction since it was identical to the offense for which the defendant was on trial. Thus the practice of admitting an identical prior felony conviction to impeach the defendant-witness has been condemned. In the instant case, the prior robbery conviction was sanitized as "one involving theft." However, because appellant was also charged with grand theft, the attempt to sanitize the prior robbery as a conviction "involving theft" was of no benefit. Thus, in view of the additional charges facing appellant, and the jury instruction that the prior felony conviction could only be considered for the purpose of determining the credibility of the witness, the sanitizing did not dispel the prejudice in admitting the prior conviction. In our view, even if the prior conviction had been admitted for the limited purpose proposed by the prosecutor, the probative value of admitting it was outweighed by the substantial danger of undue prejudice created (Evid. Code, § 352).

However, in view of the substantial evidence against appellant, and the minimal use made of the prior conviction, the error in admitting the prior conviction was not reversibly prejudicial, as it is not reasonably probable that a result more favorable to the appellant would have been reached in the absence of the error. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) The Court of Appeal recited the independent evidence against appellant that contradicts his alibi: "In spite of the fact Jackson and Cole shared a common jail cell for many weeks before the trial (during which Cole made it clear he expected Jackson to exonerate him), Jackson had difficulty in even remembering the first name of his good friend Tony [with whom Jackson said he committed the offense], referring to him on one occasion as 'Tommy' .... Cole was positively identified by the victim, was found in possession of the stolen firearms, possessed similar articles of clothing as worn by one of the perpetrators, his [brother-in-law] Jackson was found bleeding and asleep shortly after the incident in Cole's apartment, ammunition and one of the weapons were found in Cole's bedroom where he was sleeping, ammunition and a clip was found in one of Cole's socks." Thus, the error in permitting the prosecutor to inquire about appellant's prior felony conviction does not require reversal of the judgment.

■ Appellant also asserts that the court placed undue pressure on the jury to reach a verdict. After one day of deliberations, the jury delivered a note to the judge stating "the members of the jury cannot reach a unanimous verdict." Defense counsel did not object to the court's directive that the jurors go home for the weekend and resume deliberations on Monday. Prior to being released for the weekend, one of the jurors stated that she had become claustrophobic inside the small jury room. The defense counsel did not wish the juror to be excused, and the court suggested that a larger room might be available on Monday. Again, defense counsel did not object to the court's suggestion. The record does not reflect whether deliberations continued in the same or a larger room, but there were no further complaints. The jury returned a verdict after about two and one-half hours of deliberation on the following Monday.

Appellant's reliance on *People* v. *Gainer* (1979) 19 Cal.3d 835 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73] is misplaced. The court in the instant case merely directed the jury to return after the weekend to continue deliberations; there was no encouragement to the jurors to consider their numerical division or other implication that the case would necessarily be retried if the jury failed to agree. Thus, the mere direction to the jury to return for further deliberation cannot be said to have imposed "such pressure on jurors to reach a verdict that we are uncertain of the accuracy and integrity of the jury's stated conclusion." (*Id.*, at p. 850.)

■ Finally, appellant argues, and the Attorney General concedes, that the grand theft conviction must be reversed because it is a lesser necessarily included offense of the crime of robbery. (*People* v. *Miller* (1974) 43 Cal.App.3d 77, 81 [117 Cal.Rptr. 491].) "If the evidence supports the verdict as to a greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed." (*People* v. *Moran* (1970) 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763].)

The conviction for grand theft is vacated, the three-year enhancement pursuant to section 12022.7 is stricken, and the cause is remanded with instructions to resentence the appellant in accordance with the decision herein.

Bird, C. J., Mosk, J., and Newman, J., concurred.

**KAUS, J.**—I concur in the result. I merely observe that the effort to find that the violation of the rule of *People* v. *Fries* (1979) 24 Cal.3d 222, 229-232 [155 Cal.Rptr. 194, 594 P.2d 19] is harmless error simply underscores my belief that *Fries* is ripe for reconsideration. Whatever may be the value of felony-impeachment in general, it is clear to me that the Legislature never intended an elaborate, court-created set of fixed rules by which the admissibility of prior felony convictions for impeachment was to be governed. The true intent was, I submit, that the entire problem be dealt with on a case-by-case basis under the aegis of section 352 of the Evidence Code. (See *People* v. *House* (1970) 12 Cal.App.3d 756, 768-774 [90 Cal.Rptr. 831] (conc. opn.).)

Richardson, J., concurred.