**STATE of Utah, Plaintiff and Respondent,**

v.

**Paul Anthony BRANCH, Defendant and Appellant.**

No. 20557.

Supreme Court of Utah.

Sept. 17, 1987.

Rehearing Denied Oct. 21, 1987.

Brooke Wells, Christopher Kerecman, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Dave B. Thompson, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

A jury convicted defendant Paul Anthony Branch of theft, aggravated robbery, and aggravated assault. The judge who supervised defendant's jury trial subsequently convicted defendant of being a habitual criminal.

Defendant challenges the admission of testimony from several eyewitnesses; the judge's refusal to give a cautionary instruction concerning the eyewitness testimony; the sufficiency of the evidence; the judge's application of the habitual criminal statute; the conviction for aggravated robbery as well as aggravated assault and theft, which defendant claims are lesser included offenses of aggravated robbery; and the giving of a jury instruction concerning possession of recently stolen property.

Two men robbed the Oakwood Jewelry store in Salt Lake City in August 1984. One of the robbers forced the store's sole employee into the bathroom at the back of the store. A customer interrupted the robber and was forced into the bathroom with the employee. The pair was instructed not to look at the robbers' faces. One robber guarded the bathroom while the other plundered the jewelry cases. A woman and her daughter who were parked in a car outside the store saw the robbers leave the store. A diner in a nearby restaurant also observed the robbers leaving the store.

In September, Los Angeles police officers arrested several people, including the co-defendants in this case, in Los Angeles on drug-related charges. A search made at the time of their arrest revealed jewelry from the Salt Lake robbery. The search also uncovered a picture of defendant's half brother and identification documents in the name of defendant's half brother.

The Los Angeles police identified the store where some of the jewelry had been pawned and showed the proprietor of the establishment a photo array from which he selected a picture of defendant's half brother as the man who had pawned the stolen jewelry.

The Salt Lake City police received a picture of defendant's half brother, which they misidentified as defendant. Defendant was arrested for the robbery. At the time of his arrest, no jewelry was found among his possessions. Defendant was tried with the men who were arrested in Los Angeles.

### The Eyewitness Identifications and Testimony

Defendant raises two issues concerning the admission of the eyewitness testimony associating him with the crime: the trial court's refusal to suppress in-court identifications of defendant by the State's witnesses and the trial judge's failure to give a cautionary jury instruction concerning eyewitness identification. We reject defendant's arguments.

Defendant made a motion in limine to suppress the eyewitness testimony. In support of his motion, defendant presented a summary that his counsel had created from the police reports and uncertified cop-

ies of the preliminary hearing transcripts. These materials purportedly demonstrated that the eyewitness testimony should have been suppressed. Defendant apparently based the motion on Utah Rule of Evidence 403 and an assertion that improper pretrial identification violated defendant's federal constitutional rights. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). We find no error in the trial judge's rejection of defendant's motion.

The trial judge stated that he found "no real evidence here of unnecessarily suggestive procedures that took place during any pretrial investigation." In the absence of clear error, we uphold a trial judge's factual assessment underlying a decision to grant or deny a suppression motion. *State v. Bullock,* 699 P.2d 753, 755 (Utah 1985); *State v. Tuttle,* 16 Utah 2d 288, 291, 399 P.2d 580, 582, *cert. denied,* 382 U.S. 872, 86 S.Ct. 129, 15 L.Ed.2d 110 (1965). In this case, the trial judge considered the evidence proferred by the defense with appropriate suspicion. Although not bound by the Rules of Evidence in a suppression hearing, a trial judge must weigh the reliability and probative value of materials presented to aid in the decision to admit or exclude evidence. *See* Utah R.Evid. 1101, 104(a). In this case, the defense evidence consisted largely of defendant's own summaries of police reports and unofficial transcripts of the preliminary hearings prepared by the public defender's staff. Police reports are not prepared for the purpose of accurately recording the descriptions of a perpetrator given by individual witnesses; rather, they are compiled to aid the police in apprehending the perpetrator and often reflect the product of collective memory as it is gathered by several officers who communicate with each other. Defendant's prepared abstracts of such records are even more suspect because the witnesses' statements had been filtered through yet another recorder, who is not likely to be unbiased. The preliminary hearing reports are similarly suspect because the preparation was done, not by a neutral reporter, but by a party. Further,

the trial judge felt that various witnesses' statements which described defendant as Mexican, Iranian, or Italian were not necessarily inconsistent and were not the product of improper police procedure, leaving the issue of inconsistency for cross-examination at trial. The only evidence defendant presented concerning the pretrial identification procedures used by the police was statements of defendant's counsel concerning the array displays and the pictures used in the arrays.[1] Therefore, we think the judge did not err in rejecting defendant's claim that the procedures were unnecessarily suggestive.

The trial judge was also correct in refusing to exclude the testimony on the basis of Utah Rule of Evidence 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"We will not overturn the trial court's ruling [on the application of Rule 403] unless the abuse of discretion is so severe that it results in a 'likelihood of injustice.'" *State v. Knowles,* 709 P.2d 311, 312 (Utah 1985) (quoting *State v. McCardell,* 652 P.2d 942, 944 (Utah 1982)). We do not think the trial judge abused his discretion in refusing to exclude the eyewitness identifications. Indeed, we do not see how the eyewitness testimony could fall within the categories of evidence excludable under Rule 403. The eyewitness testimony did not have the inflammatory potential found in the sort of evidence typically excluded under that Rule. *See State v. Cloud,* 722 P.2d 750 (Utah 1986) (gruesome photographs of a crime victim should have been excluded because the probative value of the photographs was outweighed by the possibility that the jury's passions would be inflamed by the gruesome nature of the crime and would distract them from the issue of the defendant's mental state). Nor could the

---

**1.** The police officer who showed at least one witness a photo array was cross-examined by the counsel of one of the co-defendants concerning the identification of that co-defendant.

eyewitness testimony have confused or misled the jury or wasted its time. The eyewitness testimony was the heart of the State's case and did not serve to draw the jury into the type of collateral assessments that Rule 403 is designed to avoid. The trial judge was correct in allowing the jury to assess the credibility of the eyewitness; Rule 403 is not to be used to allow the trial judge to substitute his assessment of the credibility of testimony for that of the jury by excluding testimony simply because he does not find it credible.

■ We next consider defendant's claim that a cautionary instruction should have been given. In *State v. Long*, 721 P.2d 483 (Utah 1986), we made a detailed analytical consideration of the reliability of eyewitness testimony and concluded that "in cases tried from this date forward, trial courts shall give such an instruction whenever eyewitness identification is a central issue in a case and such an instruction is requested by the defense." *Id.* at 492. This case was, however, tried before *Long* became law. In reviewing cases tried before *Long*, we evaluate the defendant's claim under the case law applicable at the time the defendant was tried. *State v. Jonas*, 725 P.2d 1378, 1380 (Utah 1986).

At the time of trial, the giving of a cautionary instruction was left to the discretion of the trial judge under the "totality of the circumstances." *State v. Reedy*, 681 P.2d 1251, 1254 (Utah 1984); *see also State v. Jonas*, 725 P.2d 1378 (Utah 1986) (summarizing the crucial pre-*Long* case law).

This case presents us with a particularly difficult task in evaluating whether the trial judge abused his discretion. The eyewitness testimony identifying defendant as one of the robbers was equivocal. The jewelry store clerk admitted that she did not see defendant during the robbery because she was restrained in the bathroom by a man she identified as one of the co-defendants. A Los Angeles police officer identified defendant as a man he saw walking in front of the motel where the co-defendants were arrested. The officer admitted that he was on a routine patrol when he saw defendant for a few moments. The officer testified that he had observed defendant only briefly and had no reason to suspect defendant of any criminal activity. The officer admitted that defendant strongly resembled defendant's half brother, whose picture was found in the co-defendants' motel room, and that the officer had only recently learned that the picture was not of defendant. The officer admitted that the photo had been included in photo spreads on the assumption that it was of defendant. The officer's partner, who had a similarly brief glimpse, also identified defendant. Defendant was identified by the owner of the jewelry store, who claimed he saw defendant walking around in the store early on the day of the robbery. However, the store owner identified one of defendant's co-defendants as defendant at trial and then changed his mind and identified defendant. The mother and the daughter who were in a parked car in front of the jewelry store and saw the robbers briefly as they left the store identified defendant, whom they described as bearded. The diner in the restaurant across the street also identified defendant. Finally, the customer who interrupted the robbery testified. She described the man she saw in the front of the store as unbearded. On direct examination, she identified one of the co-defendants as the robber at the front of the store. Under cross-examination, she changed her mind and identified defendant.

None of the witnesses had a particularly good opportunity to observe the robbers. The witnesses gave inconsistent and hesitant descriptions, and some witnesses changed their opinion at trial. Furthermore, there exists a substantial possibility that defendant has been confused in this case with his half brother, who closely resembles him. On the other hand, we have never found an abuse of discretion when a judge refused a cautionary instruction in a case with more than one eyewitness, and having decided to apply *Long* prospectively, we must be cautious in applying the pre-*Long* case law without reference to our later analysis. Were I writing only for myself and Justice Stewart, I would find an abuse of discretion. However, three of my

colleagues are convinced that no abuse of discretion occurred; therefore, defendant's argument must be rejected.

■ We also reject defendant's claim that the evidence was insufficient to support his conviction. The jury simply chose to believe the eyewitness identifications of defendant.

### The Lesser Included Offense

■ Defendant was convicted of aggravated robbery of the store clerk and aggravated assault of the customer who interrupted the robbery and was forced into the bathroom. The jury also found defendant guilty of theft. Defendant argues that aggravated assault and theft are lesser included offenses of aggravated robbery. *See* Utah Code Ann. § 76–1–402(3) (1978). We analyze the issues separately.

We disagree with defendant as to the aggravated assault charge. A charge is a lesser included offense when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein; or

(c) It is specifically designated by a statute as a lesser included offense.

Utah Code Ann. § 76–1–402(3) (1978).

In this case, aggravated robbery and aggravated assault were simply two offenses committed within the same criminal episode. The crimes required proof by different evidence and had two different victims. The testimony of the store clerk established the robbery; the testimony of the customer proved the assault.

We agree with defendant, however, that theft is a lesser included offense of aggravated robbery in this case. In *State v. Hill*, 674 P.2d 96 (Utah 1983), we considered whether theft was a lesser included offense of aggravated robbery. The analysis set forth in that case is controlling.

The principal test [for whether a crime is a lesser included offense] involves a comparison of the statutory elements of each crime. Subsection 76–1–402(3)(a) provides the definition of lesser included offenses that is applied for this purpose: an offense is lesser included when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged...." Thus, where the two crimes are "such that the greater cannot be committed without necessarily having committed the lesser," *State v. Baker*, Utah, 671 P.2d 152, 156 (1983), then as a matter of law they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both. So it is with robbery and theft, which are generally acknowledged to occupy the greater-lesser relationship. *State v. Elliott*, Utah, 641 P.2d 122, 123 (1982); *People v. Cole*, 31 Cal.3d 568, 582, 645 P.2d 1182, 1191, 183 Cal. Rptr. 350, 359 (1982).

The secondary test is required by the circumstance that some crimes have multiple variations, so that a greater-lesser relationship exists between some variations of these crimes, but not between others. *E.g., State in Interest of L.G.W.,* Utah, 641 P.2d 127, 130–31 (1982) (forcible sexual abuse and lewdness). A theoretical comparison of the statutory elements of two crimes having multiple variations will be insufficient. In order to determine whether a defendant can be convicted and punished for two different crimes committed in connection with a single criminal episode, the court must consider the evidence to determine whether the greater-lesser relationship exists between the specific variations of the crimes actually proved at trial. The multiple variations of the crime of aggravated robbery involved in this case show why this is necessary.

Aggravated robbery is committed by using a firearm in one of three circumstances: "[1] in an attempt to commit, [2] during the commission of, or [3] in the immediate flight after the attempt or commission of a robbery." § 76–6–302(1) and (3). As the district court concluded, according to a theoretical comparison of the statutory elements of each

crime, theft is not a lesser included offense of aggravated robbery because theft is not "established by proof of the same or less than all the facts required to establish the commission of [one variation of] the offense charged." § 76–1–402(3)(a). This is because the obtaining or exercising of unauthorized control over the property of another (an element of theft) is not an element of the first variation of aggravated robbery (use of a gun in an *attempt* to commit a robbery). In contrast, the greater-lesser relationship does exist between theft and the second variation of aggravated robbery (use of a gun during the *commission* of a robbery).

In this case, the only evidence before the jury showed a completed robbery, with property taken from the person of the manager by use of a firearm, and the crime of theft as part of that same criminal episode. As to this variation of aggravated robbery, the crime of theft *is* a lesser included offense. Consequently, on the facts of this case § 76–1–402(3) clearly bars this defendant's being convicted and punished for theft in addition to aggravated robbery.

*State v. Hill,* 674 P.2d at 97–98 (footnote omitted).

The State attempts to distinguish *Hill* by arguing that defendant was charged with second degree felony theft, which requires that the property stolen is valued at over $1,000. *See* Utah Code Ann. § 76–6–412(1)(a)(i) (1978). We cannot accept that argument. Section 76–6–412(a)(a)(i) does not outline the elements of the crime of theft; it simply categorizes theft for sentencing purposes into various degrees of felonies and misdemeanors.

The State also argues that defendant committed attempted theft and thus is within the version of aggravated robbery of which theft is not a lesser included offense. *State v. Hill,* 674 P.2d at 97. We cannot see how that follows from the facts, which demonstrate a "completed robbery" as in *Hill.*

*Jury Instruction*

Defendant asserts numerous errors surrounding a jury instruction concerning possession of recently stolen property. The facts, however, contain no suggestion that defendant ever had possession of recently stolen property; thus, the instruction could not, even if it was erroneous, have prejudiced him. The issue of the propriety of the instruction is one for defendant's co-defendants who were in possession of the stolen jewelry when they were arrested.

*Habitual Criminal*

 Defendant was convicted under Utah Code Ann. § 76–8–1001 (1978) of being a habitual criminal. *See* Utah Code Ann. § 76–8–1001 (1978) (a defendant with two prior convictions within certain statutorily set perimeters may "upon conviction of at least a felony of the second degree ..." be determined to be a habitual criminal).

The State offered proof of three previous eligible felony convictions. One conviction was accompanied by an affidavit of voluntariness signed by defendant. The affidavit was apparently executed pursuant to Utah District Court Rule of Practice 3.6, which gives a trial judge the option of having a defendant sign an affidavit of voluntariness. Defendant does not assail the State's use of that affidavit. *See State v. Saunders,* 699 P.2d 738, 743 (Utah 1985) (affidavit signed by plaintiff, with advice of counsel, raises presumptions of voluntariness and knowledge of elements and nature of charge). Defendant argues not that his other two guilty pleas were involuntary, but that the State has not proven that the other two pleas were voluntary. We agree that an involuntary guilty plea cannot be used to enhance or support a subsequent conviction. *See Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) (plea entered without counsel could not support a conviction under recidivist statute). However, we agree with the trial court that the State has proven that defendant's prior guilty pleas were voluntary. The State demonstrated that both pleas were entered with the benefit of counsel. Therefore, in the absence of any evidence demonstrating the pleas were involuntary, the pleas are presumed to have been voluntary. *See Moxley v. Morris,* 655 P.2d 640, 641 (Utah 1982). A defendant can overcome this presumption by presenting to the trial court some evidence of

involuntariness, thus shifting back to the State the burden of demonstrating voluntariness. The defendant is the party who can most readily demonstrate that the pleas were involuntarily made if they indeed were; it therefore seems unreasonable to impose upon the State the duty of showing not only that the pleas were made with adequate counsel, but also that the pleas were not involuntary.

Finally, defendant argues that the cumulative effect of the errors he alleges denied him a fair trial and that reversal is required because of the cumulative effect even if no single error was prejudicial. We need not consider this argument because the only legitimate error raised by defendant was his conviction of both a greater and lesser included offense. We reverse defendant's conviction for theft and vacate the sentence thereon and affirm defendant's conviction for aggravated robbery.

HALL, C.J., STEWART, Associate C.J., and HOWE and ZIMMERMAN, JJ., concur.