**STATE of Utah, Plaintiff and Respondent,**

v.

**Ranala Leimani MANE, Defendant and Appellant.**

**No. 890330–CA.**

Court of Appeals of Utah.

Nov. 14, 1989.

Marla C. Jones and Stott P. Harston, Provo, for defendant and appellant.

R. Paul Van Dam and Charlene Barlow, Salt Lake City, for plaintiff and respondent.

Before BENCH, BULLOCK [1] and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Ranala Leimani Mane appeals his conviction of murder in the second degree, in violation of Utah Code Ann. § 76–5–203 (Supp.1989); attempted murder in the second degree, in violation of Utah Code Ann. §§ 76–5–203, 76–4–101 and 76–4–102 (Supp.1989); and two counts of aggravated assault, in violation of Utah Code Ann. § 76–5–103 (Supp.1989). Defendant urges reversal of his convictions, contending that he was erroneously charged, convicted, and sentenced for all four offenses, and that the trial court erred by improperly imposing sentencing enhancements for the use of a firearm, and by refusing to accept his pleas of guilty during the trial. We affirm.

On December 19, 1987, defendant and Savelio Fuga went to the Silver Spur bar in Provo, Utah. Because of an altercation, they were ejected from the bar by Tom Tromley and Poponatui Fifita, who were employed as bouncers at the bar. Once outside the bar, defendant and Fuga threatened Tromley and Fifita. Defendant said he was going to get a gun and return to kill Tromley. Defendant and Fuga went to Fuga's house and picked up Fuga's .45 caliber semi-automatic pistol. Defendant and Fuga then picked up Lene Tauiliili. The threesome returned to the bar at approximately 12:45 a.m. The bar was then closing and bar patrons were leaving. While Fuga and Tauiliili stayed in the vehicle, defendant walked towards the bar's entrance with the gun.

Tromley, who saw defendant approaching the bar, told Mike Brown, another bouncer employed at the bar, that the guy who had threatened to shoot Tromley was outside. Brown opened the door. Tromley was standing behind Brown with his hand on Brown's right shoulder. Scott Orr, a bar patron, was standing in the doorway along with several other people, preparing to leave the bar. Tromley told defendant he could not come in. Defendant smiled, raised the gun chest high, and fired. Brown was struck four times by gunshots and died soon thereafter. When defendant raised the gun, Tromley dove for the bar. After the initial shots, Tromley looked over his shoulder and saw defendant level the gun at him. He heard two more shots as he dove behind a video arcade machine at the bar. Tromley was not struck by the firing. Orr, who was directly behind Brown, was struck near his armpit. After firing the shots in the bar, defendant ran outside towards a group of patrons. When he reached the group, defendant, at approximately one foot's distance, pointed and fired his gun, striking Cliff Argyle in the back.

Defendant was charged with murder in the first degree for Brown's death, attempted murder for knowingly or intentionally attempting to cause Tromley's death, and two counts of aggravated assault for

---

1. J. Robert Bullock, Senior District Judge, sitting by special appointment pursuant to Utah

Code Ann. § 78–3–24(10) (1989).

assaulting Argyle and Orr with a deadly weapon. The jury found defendant guilty of murder in the second degree, attempted murder, and both counts of aggravated assault. The trial court sentenced defendant to consecutive prison terms for the four convictions. The trial court also imposed consecutive sentence enhancements for each offense for defendant's use of a firearm.

## I. MULTIPLE CHARGES, CONVICTIONS, AND SENTENCES

Defendant first contends that he was improperly charged, convicted, and sentenced for attempted murder and two counts of aggravated assault, in addition to the murder of Brown. Defendant argues that because the shootings were part of a single criminal episode,[2] they should be treated as one act. He also contends that the offenses of attempted homicide and aggravated assault are lesser included offenses of the homicide offense. Defendant argues, therefore, that the trial court erred in refusing to dismiss the "lesser charges" during trial and in sentencing defendant for the lesser included offenses as well as for the greater crime of homicide. Although the State concedes the shootings were part of a single criminal episode, it insists the shootings were separate acts involving different victims and constitute offenses which do not stand in the relationship of greater and lesser offenses. The State asserts, therefore, that defendant was appropriately charged, convicted, and punished for the four offenses. We agree.

### a. Multiple victims of a single criminal episode and/or act.

Utah Code Ann. § 76–1–402(1) (1978) states in pertinent part:

> A defendant may be prosecuted in a single criminal action for all separate offenses arising out of a single criminal episode; however, when the same act of

a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision....

■ Further, Utah Code Ann. § 76–1–601 (1978) includes several general definitions applicable to the criminal code, with the caveat that those definitions apply "[u]nless otherwise provided or a different meaning plainly is required." Subsection (1) defines "Act" as "a voluntary bodily movement." Therefore, we must determine if "same act" as used in section 76–1–402(1) means that defendant should have been prosecuted and convicted of less than all four offenses. In this case, intentionally shooting and killing Brown; firing at Tromley in an attempt to kill him; and then turning and running, stopping to fire at Argyle, were distinct voluntary bodily movements, or acts. As a result, section 76–1–402(1) permits separate charging and convictions for each of these separate acts, although they were committed within the same criminal episode.

However, characterizing the shooting of Orr as a separate act poses a somewhat different question. The record is unclear as to whether or not the bullet that struck Orr had already passed through the body of Brown. Consequently, it is possible that the same physical act of pulling the trigger of the gun once and discharging one bullet resulted in both Brown's death and Orr's injury. Defendant argues that because the same act resulted in both, he could be charged and prosecuted for only one offense, either homicide or assault.

Historically, there has been disagreement among jurisdictions considering whether a single criminal act resulting in multiple victims constitutes a single offense or multiple offenses. R. Owens, *Alabama's Minority Status: A Single Criminal Act Injuring Multiple Persons Con-*

---

**2.** Utah Code Ann. § 76–1–401 (1978) defines a "single criminal episode" as "all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective." In this case, the shootings were

all part of a single criminal episode. They occurred in close proximity to each other and were incident to the attempt to murder Tromley.

*stitutes Only a Single Offense*, 16 Cumb. L.Rev. 85 (1985–1986). Owens reported that as of 1985, thirty-three jurisdictions "specifically endorse multiple convictions" where there are multiple victims of a single criminal act, while only four disallowed such multiple convictions. *Id.* at 89–90. Since that time, at least two of the minority states have adopted the majority view.[3] The Utah case cited by Owens as adopting the majority view is *State v. James*, 631 P.2d 854 (Utah 1981). In *James*, the Utah Supreme Court held that offenses committed against multiple victims are not the same for double jeopardy purposes. The court stated that "[i]n crimes against the person (as contrasted with crimes against property), a single criminal act or episode may constitute as many offenses as there are victims." *Id.* at 855 (footnote omitted). The court explained as follows:

A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person. This distinction between an act of violence against the person that violates more than one statute and such an act that harms more than one person is well settled.

*Id.* (quoting *Neal v. State*, 55 Cal.2d 11, 20, 357 P.2d 839, 844, 9 Cal.Rptr. 607, 612 (1960), *cert. denied* 365 U.S. 823, 81 S.Ct. 708, 5 L.Ed.2d 700 (1961)). The court noted that the kidnapping statute at issue referred to a *singular* victim, and therefore each kidnap victim gave rise to a separate offense. *Id.* The court did not, however, specifically address the language of section 76–1–402(1). In *State v. Henley*, 141 Ariz. 465, 687 P.2d 1220 (1984), a case with facts similar to those herein, the Arizona Su-

preme Court determined that a defendant could properly be given separate consecutive sentences where he fired a single bullet which travelled through the body of one victim and hit another. The Arizona court held that the reasoning precluding application of double jeopardy also

applies when determining culpability for multiple aggravated assaults.... When the act of firing one bullet results in two persons being injured, the person firing the bullet is responsible for two separate and distinct injuries and therefore has committed two assaults. This is so even though he has only committed one act and may only have had one "original" intent.

*Id.* at 1222.

■ Defendant in this case, as in *James*, was convicted in each instance of violating a statute referring to "another," a singular victim. Also, the term "same act" as used in section 76–1–402(1) should be read in conjunction with the later statutory language in the same section, pertaining to offenses under different provisions of the code which may be violated by a single act. As implied in *James*, for example, the single act of shooting Brown could be chargeable as first degree homicide, negligent homicide, or manslaughter. However, the shooting of a second victim, albeit with the same bullet, is not an offense "which may be punished in different ways under different provisions of this code," but is punishable as a separate offense. We do not believe that the legislature intended to preclude greater punishment where multiple victims exist. It is more reasonable to assume the legislature intended that culpability have a relationship to the magnitude of the crime committed, including consideration of the number of victims. Otherwise, one who placed a bomb in an airline resulting in the deaths of dozens of people would be less severely punished than one who repeatedly fired a gun at a number of persons, with a similar resulting casualty figure. We, therefore, hold that "act" as

---

**3.** *McKinney v. State,* 511 So.2d 220, 225 (Ala. 1987); *Ex parte Rathmell,* 717 S.W.2d 33, 36 (Tex.Crim.App.1986).

used in section 76–1–402(1) includes not only volitional acts of a defendant, but also the number of victims, as each is acted upon by a defendant. In this case, a single bullet may have struck both Orr and Brown. Each striking was an "act" constituting a separate offense, allowing separate charges and convictions. Our holding is consistent with the majority rule that allows for multiple convictions when more than one person is injured or killed regardless of whether the injury or death resulted from an original intent or from a single act. *State v. Couture,* 194 Conn. 530, 482 A.2d 300, 319 (1984), *cert. denied* 469 U.S. 1192, 105 S.Ct. 967, 83 L.Ed.2d 971; *Vigil v. State,* 563 P.2d 1344, 1351–53 (Wyo.1977); R. Owens, *supra,* at 106–07.

### b. Lesser Included Offenses.

Defendant further argues that the multiple convictions violate Utah Code Ann. § 76–1–402(3) (1978), which provides:

A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged.

■ Defendant urges that convicting him of all four offenses was error because the attempted homicide and assaults were lesser included offenses of homicide. However, it is clear that the attempted homicide and aggravated assaults are not lesser included offenses of either the capital homicide charge or defendant's second degree murder conviction.[4] Commenting on section 76–1–402(3), the Utah Supreme Court stated that "where the two crimes are 'such that the greater cannot be committed without necessarily having committed the lesser,' then as a matter of law they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both." *State v. Branch,* 743 P.2d 1187, 1191 (Utah 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1597, 99 L.Ed.2d 911 (quoting *State v. Baker,* 671 P.2d 152, 156 (Utah 1983)). *See also State v. Elliott,* 641 P.2d 122, 123 (Utah 1982); *State v. Williams,* 636 P.2d 1092, 1096 (Utah 1981). In *Branch,* the court determined that aggravated assault was not a lesser included offense of aggravated robbery because "[i]n this case, aggravated robbery and aggravated assault were simply two offenses committed within the same criminal episode. The crimes required proof by different evidence *and had two different victims." Id.* at 1191 (emphasis added). In *Branch,* as in the present case, defendant's crimes required proof by different evidence and there was more than one victim.

### c. Merger Doctrine.

■ Defendant also argues that because the attempted homicide and aggravated assault charges against him were part of the aggravating circumstances which the State alleged elevated the homicide charge to first degree, he should not have been convicted and sentenced of both, as they were lesser and greater degrees of the same offense. Defendant, in effect, argues that the circumstances "merge" so that defendant should only have been convicted and sentenced for the most serious offenses.

Defendant cites *State v. Shaffer,* 725 P.2d 1301 (Utah 1986) in support of his claim regarding lesser included offenses. While the court discusses lesser included offenses in *Shaffer,* the companion doctrine of merger is determinative. In *Shaffer,* defendant was convicted and sentenced for both aggravated robbery and capital homicide. The court held that the aggravated

---

4. Examples of lesser included offenses to criminal homicide, murder in the first degree, are found in the jury instructions given in this case. Instruction 4 gave the elements of the lesser included offense of criminal homicide, murder in the second degree. Instruction 8 gave the elements of manslaughter. These are correctly termed lesser included offenses of the capital charge because they involve the same victim and their elements could be established by proof of the same or less than all the facts required for commission of the capital offense. *See* Utah Code Ann. § 76–1–402(3) (1978).

robbery offense merged into the capital homicide, stating as follows:

> There can be no doubt that, standing alone, the crimes of aggravated robbery and first degree murder are separate offenses.... However, under the test for separateness found in section 76–1–402(3), aggravated robbery becomes a lesser included offense of first degree felony murder where, in the situation such as the case at bar, the predicate felony for first degree murder is aggravated robbery. No additional facts or separate elements are required to prove aggravated robbery after first degree murder based on the predicate offense of aggravated robbery is shown.... If the greater crime is proven, then the lesser crime merges into it. Consequently, U.C.A., 1953, § 76–1–402(3) prevents the defendant from being convicted and sentenced for aggravated robbery in addition to first degree murder where the aggravating circumstance is aggravated robbery.

*Id.* at 1313–14 (footnote omitted). *Shaffer* is inapplicable to the present case because defendant was not convicted of capital homicide as charged, but instead, of second degree murder. Consequently, no predicate offense was required for that conviction and there is no appropriate conviction with which to merge.

### d. Separate Sentences.

■ Defendant next urges that he should not have received separate sentences for each of the convictions. Utah Code Ann. § 76–3–401(3) (1989) provides: "A court may impose consecutive sentences for offenses arising out of a single criminal episode...." In *State v. O'Brien*, 721 P.2d 896 (Utah 1986), defendant argued that his convictions stemmed from one criminal episode so he should have only been given one sentence. The court said:

> A defendant may not be punished twice for a single act. Although defendants' crimes were committed during a single criminal episode, the crimes were a result of separate and distinct crimes. Thus, under ... § 76–3–401(3) ... the trial judge was well within his discretion in sentencing defendants for four separate crimes.

*Id.* at 900 (footnote omitted). We have already concluded that defendant committed four separate and distinct crimes. The court did not, therefore, err by imposing four consecutive sentences.

### II. GUILTY PLEA

Defendant also maintains that the trial court erred by refusing to accept his pleas of guilty. After the State's case-in-chief, defendant offered to plead guilty to the aggravated assault charge involving Orr. The court rejected defendant's plea, stating the defendant could plead guilty only after he presented his defense to the jury but prior to the verdict. Defendant renewed the motion at the close of his case-in-chief, but the court denied the motion because defendant had just testified that he had no memory of any of his actions. Defendant then offered to plead guilty to the attempted homicide charge involving Tromley as victim on grounds that it was a lesser included offense of the capital charge involving Brown. The court denied this motion as well because defendant testified that he had no memory of his actions.

■ Defendant incorrectly insists the court was obligated to accept his guilty plea. Rule 11(e) of the Utah Rules of Criminal Procedure provides that "[t]he court may refuse to accept a plea of guilty or no contest." Utah Code Ann. § 77–35–11(e) (Supp.1988) (repealed effective July 1, 1990). Nothing in the statute requires a court to accept a guilty plea and defendant has cited no case authority for that proposition. We conclude, therefore, the trial court did not abuse its discretion by refusing to accept defendant's guilty plea.

### III. SENTENCING ENHANCEMENT

Finally, defendant maintains the trial court erred in imposing sentencing enhancements for the use of a firearm for each of the felony convictions. The court imposed additional one year sentences for use of a firearm in the commission of the

second degree murder and the attempted murder and additional indeterminate terms not to exceed five years for the use of a firearm in the commission of the aggravated assaults. Each enhancement for the four convictions was to run consecutively and not concurrently. Defendant argues that enhancing his sentences for offenses arising out of the same criminal episode is fundamentally unfair because it imposes double punishment. Consequently, defendant reasons that only a single enhancement ought to be imposed.

Defendant concedes that Utah law is not supportive of his position, but urges the court to follow other jurisdictional law, as a more fair approach. *See, e.g., In re Culbreth,* 17 Cal.3d 330, 551 P.2d 23, 130 Cal. Rptr. 719 (1976); *State v. Howe,* 26 Or.App. 743, 554 P.2d 605, 607 (1976). The cases defendant cites, however, rely on statutory provisions which are different from Utah's.

Utah Code Ann. § 76–3–203 (Supp.1988) mandates sentencing enhancement for the use of a firearm in each first and second degree felony conviction and gives the court discretion to impose a sentencing enhancement for the use of a firearm in each third degree felony conviction. The statute provides in pertinent part:

A person who has been convicted of a felony may be sentenced to imprisonment for an indeterminate term as follows:

(1) In the case of a felony of the first degree, for a term at not less than five years, ... and which may be for life but if the trier of fact finds a firearm ... was used in the commission or furtherance of the felony, the court shall additionally sentence the person convicted for a term of one year to run consecutively and not concurrently; and the court may additionally sentence the person convicted for an indeterminate term not to exceed five years to run consecutively and not concurrently;

(2) In the case of a felony of the second degree, for a term at not less than one year nor more than 15 years but if the trier of fact finds a firearm ... was used in the commission or furtherance of the felony, the court shall additionally sentence the person convicted for a term of one year to run consecutively and not concurrently; and the court may additionally sentence the person convicted for an indeterminate term not to exceed five years to run consecutively and not concurrently;

(3) In the case of a felony of the third degree, for a term not to exceed five years but if the trier of fact finds a firearm ... was used in the commission or furtherance of the felony, the court may additionally sentence the person convicted for an indeterminate term not to exceed five years to run consecutively and not concurrently.

The statute does not limit the firearm enhancement to only one enhancement for all crimes arising out of a single criminal episode. We cannot adopt the law of other jurisdictions in derogation of our legislature's clear sentencing procedure requirements. "It is the prerogative of the legislature to prescribe the punishment for crimes. Included therein is the authority to increase the degree of crime, where instruments of violence, such as explosives or firearms are used." *State v. Angus,* 581 P.2d 992, 994–95 (Utah 1978) (footnote omitted). Because the jury found that a firearm had been used in the commission of each felony committed by defendant in this case, the trial court correctly imposed the enhancement.

Affirmed.

BULLOCK, J., concurs.

BENCH, J., concurs in the result.