[No. C057684. Third Dist. Apr. 29, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
KATHY FRAZIER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

†Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II and III of the Discussion.

**COUNSEL**

Donald J. Horvath, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Michael A. Canzoneri and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SIMS, Acting P. J.—Defendant Kathy Frazier appeals following her conviction of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1))[1] with an enhancement of sentence for personally inflicting great bodily injury on the victim (§ 12022.7, subd. (a)). Defendant urges us to strike her sentence enhancement on the rationale that she did not personally inflict great bodily injury when directing a dog to attack the victim. We reject the contention, and shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### Prior dog attacks

In early January 2007, defendant was living in a tent next to a house at 5309 Southwest Avenue that belonged to the Cervantes family. Defendant cleaned the family's house and yard as well as taking care of their two dogs, Papas and Midnight. The dogs spent considerable time with defendant, and they obeyed her.

The dogs also obeyed their owner, Angelica, who ordered them to attack a man whom she had seen talking with defendant. Defendant was present, but did not direct the attack. The man was badly injured before defendant helped get the dogs off of him. A neighbor testified that this was not the first time that the dogs had attacked people.

### The dog attack of Denise Doll

On January 19, 2007, defendant watched Denise Doll and her fiancé Shawn Blackmon walk by the front of 5309 Southwest Avenue. Doll and Blackmon planned to stay with Kim, a female friend living nearby. Several minutes after the couple arrived at Kim's house, defendant saw Doll leave alone.

When Doll walked by 5309 Southwest Avenue, defendant opened the gate and commanded the dogs to "get her, get her." The dogs attacked Doll, with Papas biting deeply into her leg. Doll fell to the ground screaming, and was unable to get away. Papas's bite exposed the leg bone and muscle, causing Doll to bleed profusely.

Oleta Valadez lived next door and witnessed the attack. She told defendant to call the dogs off, but defendant refused. Defendant told Valadez to "stay out of it" because defendant "[had her] reasons."

---

[1] Undesignated statutory references are to the Penal Code.

Blackmon heard Doll's screams and ran to the scene. He placed himself between the dogs and Doll. Only then did defendant call the dogs back into the yard and close the gate.

Defendant told Doll that the attack was for Doll leaving Blackmon alone with Kim at Kim's house. Doll, however, barely knew defendant. Doll had never threatened defendant, gotten into an argument with her, or antagonized the dogs.

When Sacramento County Sheriff's Deputy Kenny Lee arrived at the scene on the day of the attack, he informed defendant that the dogs needed to be quarantined because one had bitten a person. Defendant verbally refused and attempted to block the deputy and an animal control officer from capturing the dogs. Only after handcuffing and placing defendant in the back of a patrol car was the animal control officer able to catch Papas.

When the police officer asked defendant what her name was, she falsely identified herself as Sheila Smith.[2]

The attack left dark scars on Doll's leg. At trial, Doll testified that she continued to experience significant pain at the bite area. Although the throbbing had subsided, an aching sensation remained. Doll still had trouble walking.

## DISCUSSION

### I

### Insufficiency of the evidence

Defendant argues that we must strike the sentence enhancement because insufficient evidence supports the jury's determination that she personally inflicted great bodily injury on Doll. To this end, she asserts that "the act that directly caused physical injury to [Doll] was a bite inflicted by the dog Papas." We reject her attempt to shift criminal liability to the dog that she commanded to attack the victim.

The sentence enhancement was imposed under subdivision (a) of section 12022.7, which provides: "Any person who *personally* inflicts great bodily

---

[2] The information charged defendant's false identification of herself to a police officer as a misdemeanor. (§ 148.9, subd. (a).) Defendant was convicted and sentenced for the offense as a misdemeanor. Also, defendant's probation in two other cases was revoked without additional punishment. Neither the misdemeanor conviction nor revocation of probation is part of this appeal.

injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (Italics added.)

Defendant does not deny that Doll suffered great bodily injury, but only that defendant "personally" caused it. In so arguing, defendant relies on *People v. Cole* (1982) 31 Cal.3d 568 [183 Cal.Rptr. 350, 645 P.2d 1182] (*Cole*). In *Cole*, the California Supreme Court struck a sentence enhancement for great bodily injury because the defendant in that case had not himself struck the blows that caused the great bodily injury. (*Id.* at p. 571.) Although the defendant had instructed his accomplice to kill the victim, the Supreme Court declared that the Legislature had not intended the sentence enhancement to apply to those aiding and abetting the crime resulting in great bodily injury. (*Ibid.*)[3] Thus, the high court held that only the principals of the crime who themselves inflict the injury are subject to the sentence enhancement. (31 Cal.3d at p. 573.)

The *Cole* court said, " '[T]he rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime.' " (*Cole, supra,* 31 Cal.3d 568, 576.) Here, defendant is not derivatively liable for the assault; she is the only one culpable.

Defendant, however, would have us declare that the dog in this case stands in the same role as the person in *Cole, supra,* 31 Cal.3d 568 who hit the victim. To this end, defendant argues that "[a]bsent some valid reason to treat Papas differently than a human being, the legal result of ordering a dog to injure someone should be the same as ordering a human being to injure someone . . . ." In essence, defendant would have us treat Papas the dog as a principal in the attack, leaving her as a mere aider and abettor to the crime who does not qualify for a sentence enhancement under *Cole*.

---

[3] Section 12022.7 has been amended several times since *Cole, supra,* 31 Cal.3d 568 was decided in 1982. (Stats. 1993, ch. 607, § 2, p. 3260; Stats. 1993, ch. 608, § 2, p. 3262; Stats. 1994, ch. 873, § 3, p. 4427; Stats. 1995, ch. 341, § 1, p. 1851; Stats. 2000, ch. 919, § 1; Stats. 2002, ch. 126, § 6.) When the Supreme Court decided *Cole*, section 12022.7 provided: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted." (See *Cole,* at p. 570, fn. 1.) Despite the amendments, we believe that *Cole* remains valid authority on the meaning of "personally" causing great bodily injury presented in this case because the language applying to any person who "personally inflicts great bodily injury on any person other than an accomplice" remains the same.

■ We recognize the common tendency to anthropomorphize animals, especially beloved pet dogs. Though we might give a dog a name and ascribe a certain personality to the animal, the law does not recognize dogs as having the mental state that can incur criminal liability. (See *People v. Knoller* (2007) 41 Cal.4th 139, 147–148, 158 [59 Cal.Rptr.3d 157, 158 P.3d 731] [holding that implied malice supports a second degree murder conviction of a person who consciously disregards the natural and probable consequences of keeping dogs that endangered the life of another person]; 1 Torcia, Wharton's Criminal Law (15th ed. 1993) § 27, pp. 166–167 [noting that the Model Pen. Code recognizes that it is persons who can form the requisite mental states for criminal culpability].)

■ Despite the physical ability to commit vicious and violent acts, dogs do not possess the legal ability to commit crimes. (See *People v. Henderson* (1999) 76 Cal.App.4th 453, 470 [90 Cal.Rptr.2d 450] [affirming conviction of a person for assault with a deadly weapon in the form of dogs who were prompted by the defendant in that case to be in an agitated and ready-to-attack state; no liability was imputed to the dogs that were the instrumentality of the assault].) As a consequence, a dog cannot be a principal to a crime. Because Papas the dog could not have been a principal, defendant could not have been an aider and abettor to the attack. For this reason, *Cole*'s holding (*Cole, supra,* 31 Cal.3d 568) that aiders and abettors cannot qualify for the sentence enhancement under section 12022.7 does not apply here.

■ A dog may be the instrumentality of an attack causing great bodily injury just as a loaded gun or knife can be. In *People v. Nealis* (1991) 232 Cal.App.3d Supp. 1, 5 [283 Cal.Rptr. 376] (*Nealis*), the court held that a dog can be a deadly weapon or instrument. *Nealis* offers facts similar to this case in that the defendant ordered her dog to attack the victim by instructing it to "[g]et her! Get her!" (*Id.* at p. Supp. 3.) The dog obeyed the command and bit the victim in the leg. (*Ibid.*) Recognizing that "[a]ssault with a deadly weapon is an intentional act," the court had no difficulty in affirming the defendant's conviction despite the fact that it was the dog that caused the physical injury. (*Id.* at p. Supp. 7, fn. 3.)

■ Defendant in this case correctly points out that a dog may attack on innate instinct or do so by obeying the command of a person. However, even defendant concedes that "a well-trained dog always will attack on command." Thus, a person who has trained a dog to obey his or her commands can be subject to the sentence enhancement just as surely as that dog is to obey the command to attack.

■ Viewing the evidence in the light most favorable to the judgment, as we must (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431,

606 P.2d 738]), we conclude that sufficient evidence supports the finding that Papas attacked and mauled Doll by obeying defendant's commands. Defendant knew that the dogs would attack on command, having been present during an earlier incident when Angelica had instructed the dogs to attack a man. The dogs also obeyed defendant, who took care of them and spent much time with them. Defendant commanded the dogs to attack Doll. When a neighbor told defendant to stop the attack on Doll, defendant refused to call off the dogs. Even defendant concedes that "there is no evidence that Papas was acting instinctively when he bit [Doll]." The evidence amply demonstrates that defendant directed the attack and hindered its ending so that she is responsible for personally inflicting great bodily injury.

Contrary to defendant's assertion, the prosecution was not required to prove that defendant had rehearsed attacks with the dogs prior to the event. (See *Nealis, supra,* 232 Cal.App.3d at p. Supp. 6 [holding that a dog without prior training but which responded to a command to attack could be considered a deadly weapon or instrument].) Nor was the prosecution required to disprove an instinctive canine attack when the testimony showed defendant's express command to an obeying dog. (See *ibid.*)

Despite the evidence that defendant directed the attack, she nonetheless believes she should escape the sentence enhancement. To this end, she relies on the California Supreme Court's holding that it is " 'obvious that an individual can and often does proximately cause injury without personally inflicting that injury.' " (*People v. Bland* (2002) 28 Cal.4th 313, 337 [121 Cal.Rptr.2d 546, 48 P.3d 1107], italics omitted (*Bland*).) We take this to mean that defendant believes that while her command to attack proximately caused the injury, it was only the dog that "personally" inflicted the great bodily injury.

*Bland, supra,* 28 Cal.4th 313, however, does not help defendant. There, the California Supreme Court simply explained that " '*Cole* illustrates that the term "personally inflict" has a distinct meaning and that its use in a statute signifies a legislative intent to punish only the actor who directly inflicts an injury. . . . We think it obvious that an individual can and often does proximately cause injury without personally inflicting that injury. For instance, as noted in *Cole,* an aider and abettor of a crime can commit a direct act—affirmatively blocking a victim's exit—which proximately causes injury, but does not constitute personal infliction of an injury. (*Cole, supra,* 31 Cal.3d at p. 571.)' " (*Bland* at p. 337, italics omitted, quoting *People v. Rodriguez* (1999) 69 Cal.App.4th 341, 348–349 [81 Cal.Rptr.2d 567].) Thus, *Bland* simply reiterated *Cole's* rationale that another *person's* infliction of great

bodily injury does not derivatively impose liability for the sentence enhancement under section 12022.7. Nothing in *Bland* undermines our conclusion that *Cole* is inapposite to a case in which a defendant seeks to make a canine the principal of a crime.

We reject defendant's attempt to shift her blame to the dog.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Robie, J., concurred.

---

*See footnote, *ante*, page 613.