Filed 1/17/14  In re Craig K. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re CRAIG K., a Person Coming Under the Juvenile Court Law. | A135333 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CRAIG K.,<br><br>        Defendant and Appellant. | ORDER MODIFYING NONPUBLISHED OPINION<br><br>[NO CHANGE IN JUDGMENT]<br><br>(Sonoma County Super. Ct. No. 35803J) |

**BY THE COURT:**[*]

IT IS ORDERED that the opinion filed on December 20, 2013, is **modified** as follows and the petition for rehearing is DENIED:

---

[*] Before Jones, P.J., Needham, J., and Bruiniers, J.

1

On page 6, the last sentence of the first full paragraph in Part I of the discussion is deleted and replaced with the following sentence:

> We need not address the former argument, and we disagree with the latter.

The revised paragraph reads as follows:

> Appellant makes a two-pronged attack on the juvenile court's finding he committed an assault with a deadly weapon—his pit bull. He first contends the evidence does not support a finding the dog was an inherently deadly weapon. He then argues the evidence cannot support a finding the dog was used as a deadly weapon. We need not address the former argument, and we disagree with the latter.

The modification effects no change in the judgment.

Date: JANUARY 17, 2014                         _____ P.J.

Filed 12/23/13  In re Craig K. CA1/5 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **In re CRAIG K., a Person Coming Under the Juvenile Court Law.** | |
| **THE PEOPLE,**<br><br>   **Plaintiff and Respondent,**<br><br>**v.**<br><br>**CRAIG K.,**<br><br>   **Defendant and Appellant.** | **A135333**<br><br>**(Sonoma County Super. Ct. No. 35803J)** |

In the juvenile wardship proceeding below, Craig K. (appellant) was found guilty of assault with a deadly weapon.  (Former Pen. Code, § 245, subd. (a)(1), amended by Stats. 2011, ch. 183, § 1.)[1]  The weapon with which he was alleged to have committed the assault was his family's pit bull.  On appeal from the dispositional order, appellant claims no substantial evidence supports the juvenile court's jurisdictional finding that his dog was a deadly weapon within the meaning of the statute.  Appellant also contends he was denied due process because the juvenile court found he had committed offenses not charged in the Welfare and Institutions Code section 602 petition.

_____

[1] Section 245 was amended effective January 1, 2012.  (See Stats. 2011, ch. 183, § 1.) We refer in this opinion to the former version of the statute, which was in effect at the time of the offense, trial, and disposition.  All further undesignated statutory references are to the Penal Code.

1

We conclude the juvenile court's findings are supported by substantial evidence in the record. We further conclude appellant was not found guilty of an uncharged offense. We discern no error and therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We draw our factual statement chiefly from the testimony and evidence presented at the jurisdictional hearing held on September 19 and 23, 2011. In accordance with our standard of review, we view the evidence in the light most favorable to the judgment. (*In re Arcenio V.* (2006) 141 Cal.App.4th 613, 615.)

*The Crime*

On May 31, 2011, Christopher Fromer, a security guard at a Target store in Rohnert Park, was standing at the front doors when he saw three young males enter the store together. Fromer noticed the minors because one was wearing a heavy jacket on a warm day. In addition, they appeared to be under 21 years of age and were walking toward the store's alcohol aisle.

Fromer followed the three minors to the alcohol aisle, and he saw one of them place two bottles of rum into the front pockets of his jeans and two bottles in the back of his pants. The minor then headed back towards the front of the store. Another one of the three, who had been watching as the first took the rum, started to put a bottle of alcohol under his shirt but "froze" when he made eye contact with Fromer.

Fromer followed the minor carrying the four bottles towards the front of the store. The youth passed the cash registers without paying for the alcohol. Fromer met him at the exit, and as the young man passed through the first set of doors, Fromer stepped in front of him and identified himself as "Target security." At that point, the minor attempted to run through the second set of doors leading to the parking lot. Fromer grabbed him around the waist, but the youth's momentum pulled the two men into the parking lot.

The two struggled on the ground in the parking lot as the minor tried to get away. Fromer fell onto his back and wrapped his legs around the youth to prevent his escape. Fromer saw an acquaintance, Mike Merrill, approach from his right, while another minor,

2

later identified as appellant, approached from the left with a dog.  Appellant "was either walking fast or running towards" the struggling men, holding "the slack of the leash and the dog . . . close to his body."

Merrill intervened in the fight, grabbing the minor struggling with Fromer by his left arm in an effort to free the security guard.  As appellant approached Fromer, appellant "let go of the leash with his right hand.  He still had the end of the leash wrapped around his wrist but he let go of the slack."  Fromer was concerned because the dog was a "big p[i]t bull," a breed he had heard was aggressive.  Fromer attempted to stand, raising his left arm to protect himself from the dog.  Appellant was approaching the fighting men with his dog, which had its mouth open.  The dog bit Fromer, leaving a small puncture wound on his left forearm that caused bleeding.

When Fromer stood up, appellant was within two or three feet of him and had the leash on the dog at full extension.  While Merrill was still fighting with the first minor, appellant removed a knife from his right pocket with his left hand.  Standing about five feet from Fromer, appellant extended his left arm toward Merrill and held the knife out.  Seeing the weapon, Fromer, following Target policy, disengaged from the fight and pulled Merrill away from the first minor.  Appellant, his dog, and the minor who had taken the liquor fled toward the west side of the store.  The other two minors who had been in the store fled in a different direction.

Target's surveillance video system recorded the incident, and a disc of the video was received in evidence as petitioner's Exhibit 1.  The video showed appellant running toward Fromer with his dog as Fromer struggled with the minor who had stolen the rum.  Fromer was shown the video at trial, and he testified it depicted appellant and his dog running toward him.  The dog reared up on its hind legs and bit Fromer.[2]  At that point, appellant was not trying to pull back on the dog's leash.

Appellant's mother testified appellant's dog was a pit bull weighing 53 pounds at the time of trial.  She was unsure of the dog's age, but said it was "maybe a year [old] at

---

[2] Fromer later went to the hospital for treatment of the dog bite.  He was given a tetanus shot and told he would be contacted if the dog had rabies.

3

this point." She had not seen her son train the dog to attack. She did not know how the dog might react to a physical altercation.

Another defense witness testified she had seen the altercation in the parking lot. She saw appellant holding his dog on a leash, and it appeared to her that "when the dog was raised up, [appellant] was . . . like trying to hold him back." The witness was about 20 feet away from the altercation, and she did not see appellant with a knife. She admitted it was possible she had not seen the knife because of her distance from the fight and because appellant had his back to her.

*The Petition*

On July 11, 2011, the Sonoma County District Attorney filed a wardship petition under Welfare and Institutions Code section 602, subdivision (a) alleging three counts. The petition charged appellant with robbery (Count I), assault with a deadly weapon (Count II), and brandishing a deadly weapon (Count III). (§§ 211, 245, subd. (a)(1), 417, subd. (a)(1).) The deadly weapon with which appellant was alleged to have committed the assault was a pit bull, and the weapon he was alleged to have brandished was a knife.

*The Juvenile Court's Ruling*

After a contested jurisdictional hearing, the juvenile court granted appellant's motion to dismiss Count I and found true Counts II and III. In its oral ruling, the juvenile court noted that in the surveillance video, all four juveniles involved got out of the same car. Appellant did not enter the store with his dog, but waited in the parking lot. The court therefore inferred "that this deal was planned from the beginning." After the three other minors came running out of the store, "[w]ithin a matter of seconds [appellant] is there with his pit bull." The juvenile court was persuaded appellant was part of a scheme to steal alcohol from the store, and "[h]is game plan was . . . to help them escape."

The court went on to explain its findings and reasoning: "So I am persuaded and I'm willing to state as a matter of law that a 53-pound pit bull is a deadly weapon, and I'm happy to have that go up for an appellate review. Under these facts – I think as a matter of law, it's a deadly weapon. But under these facts, it was used in a manner that could have reasonably led to create great bodily injury or death. I know it's only a one-

year old dog, but it is a pit bull. These dogs, whether they have individual specialized training or not, they've been trained. They've been bred for generations to fight. Who they fight is determined by the master's orders. . . . They will hurt people, and they can. They are capable of inflicting great bodily harm.

"But the case doesn't have to rest on that because there's a knife involved. A knife is a deadly weapon. This was a lockback or switchblade of some type. I'm not clear exactly what it was, but it had at least a 3-inch blade or a 2-inch blade, and the knife had an overall length of 4 or 5 inches from the evidence. I believe Mr. Fromer when he testified that they waved a knife at him . . . and that enabled their escape. . . .

"So I am finding under the evidence that the Count 2 is sustained beyond a reasonable doubt, to wit, that [appellant] did, in the County of Sonoma, on or about May 31st, willfully and unlawfully commit[] an assault upon Christopher Fromer with a pit bull and/or with a knife, both being deadly weapons and both by means of force likely to produce great bodily harm."

*Disposition and Appeal*

At the dispositional hearing, the court declared the assault a felony and committed appellant to the Division of Juvenile Justice for a period of observation and diagnosis. At a further dispositional hearing, the court retained appellant as a ward and committed him to a camp program subject to various conditions. Appellant then filed a timely notice of appeal.

DISCUSSION

Appellant raises two challenges to the jurisdictional findings. First, he argues there was insufficient evidence he committed an assault with a deadly weapon with his dog. Second, appellant contends he was deprived of due process when the juvenile court found he committed the uncharged, not necessarily included offenses of assault with a deadly weapon by use of a knife and assault by means of force likely to produce great bodily injury.

5

I.      *Substantial Evidence Supports the Juvenile Court's Finding That Appellant Committed Assault With a Deadly Weapon.*

Appellant makes a two-pronged attack on the juvenile court's finding he committed an assault with a deadly weapon—his pit bull. He first contends the evidence does not support a finding the dog was an inherently deadly weapon. He then argues the evidence cannot support a finding the dog was used as a deadly weapon. We disagree on both counts.

A.      *Standard of Review and Governing Law*

"Our review of [appellant's] substantial evidence claim is governed by the same standard applicable to adult criminal cases. [Citation.] 'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.] '"[O]ur role on appeal is a limited one." [Citation.] Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]' [Citation.]" (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

The version of section 245, subdivision (a)(1) (section 245(a)(1)) in effect at the time of the offense, trial, and disposition provided: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." (Former § 245, subd. (a)(1), amended by Stats. 2011,

ch. 183, § 1.)**3** Under this subdivision, "a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.'" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029 (*Aguilar*).) Some objects are deadly weapons as a matter of law; others "may be used, under certain circumstances, in a manner likely to produce death or great bodily injury." (*Id*. at p. 1029.) "In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue." (*Ibid*.)

California law recognizes that a dog may be used as a deadly weapon. (*People v. Henderson* (1999) 76 Cal.App.4th 453, 469-470 (*Henderson*); *People v. Nealis* (1991) 232 Cal.App.3d Supp. 1, 6 (*Nealis*); see *People v. Frazier* (2009) 173 Cal.App.4th 613, 618 (*Frazier*) ["A dog may be the instrumentality of an attack causing great bodily injury just as a loaded gun or knife can be."].) A dog may be a deadly weapon if a defendant uses the dog to attack or threaten a person, and the dog is capable of inflicting serious injury. (*Henderson, supra,* 76 Cal.App.4th at p. 469; *Nealis, supra,* 232 Cal.App.3d Supp. at p. 6.)

Whether a specific dog in a given case is a deadly weapon is a question of fact. (*Nealis, supra,* 232 Cal.App.3d Supp. at p. 4.) The determination depends on the circumstances of each case. (*Id*. at p. 6.) A dog need not undergo special training before it may be deemed a deadly weapon. (*Henderson, supra,* 76 Cal.App.4th at p. 470; accord, *Frazier, supra,* 173 Cal.App.4th at p. 619 ["the prosecution was not required to prove that defendant had rehearsed attacks with the dogs prior to the event"].) "[T]he ultimate question which must be answered is whether the dog would attack, regardless of any training it may or may not have received." (*Henderson, supra,* at p. 470.)

---

**3** The cited amendment removed from subdivision (a)(1) the words "or by any means of force likely to produce great bodily injury" and added a new subdivision (a)(4) incorporating that language. (See Historical and Statutory Notes, 47C, West's Ann. Pen. Code (2013 supp.) foll. § 245, p. 119; *People v. Brown* (2012) 210 Cal.App.4th 1, 5, fn. 1 (*Brown*).)

7

B. *The Juvenile Court Could Properly Find That Appellant's Dog Was Used in a Manner Likely to Produce Great Bodily Injury.*

Appellant contends the evidence does not show he used his dog as a deadly weapon.[4] He argues that to find his dog was used as a deadly weapon, "the defendant must command or urge the dog to attack, and the dog must comply with the defendant's instructions." In addition, "the record must show the dog is capable of inflicting serious injury." Further, he contends, the defendant must intentionally engage in conduct likely to produce injurious consequences, and so "the evidence must prove appellant actually did something with [the dog] as a weapon." Appellant tells us all of these elements are lacking in this case. We cannot agree.

First, we find no explicit support in the case law for appellant's claim that to be deemed a deadly weapon, a dog must have been commanded to attack and must have complied with the command. In *Henderson, supra,* 76 Cal.App.4th 453, the appellant only "encouraged" his dogs' aggressive response to police officers and was "aware of their willingness to attack the officers should he let go." (*Id*. at p. 470.) "He then held the dogs sufficiently close to the officers to enable them to attack should they break free of his hold." (*Ibid*.) Despite the absence of an express command and despite the fact that the dogs did not actually attack the threatened police officers, the court nevertheless found the evidence supported a finding the pit bulls in that case were deadly weapons. (*Ibid*.)

Even if a command were a requirement, the evidence in this case would permit the juvenile court to infer appellant directed his dog to attack. As Fromer testified, and as Exhibit 1 shows, appellant ran toward the struggling men with his dog. As appellant approached, he released the slack on the leash, and the dog reared up on its hind legs and bit Fromer. This evidence belies appellant's claims that he "did not deliberately agitate

---

[4] We need not address appellant's contention that the juvenile court erred in finding the dog was an inherently deadly weapon. As explained earlier, the court expressly found that "*under these facts,* [the dog] was used in a manner that could have reasonably led to create great bodily injury or death." (Italics added.) This was the correct inquiry. (See *Aguilar, supra,* 16 Cal.4th at p. 1029.)

[the dog] or direct her at Fromer or Merrill" but was rather "merely standing by with his family's dog."[5]  From this evidence, the juvenile court could certainly have inferred appellant encouraged his dog's aggressive response.  (*Henderson, supra,* 76 Cal.App.4th at p. 470.)

Second, we find the evidence sufficient to sustain a finding that the dog was of sufficient size and strength relative to Fromer to be capable of inflicting great bodily injury.  (*Nealis, supra,* 232 Cal.App.3d Supp. at p. 6.)  Appellant's claim of insufficient evidence is based largely on the assertion that his dog was only about eight months old at the time of the incident and "presumably" weighed significantly less than the 53 pounds she weighed at the time of trial.  While he relies on his mother's testimony about the dog's young age, appellant's mother testified she did not know how old the dog was when it was acquired by the family.  She stated she thought the dog "wasn't very old" and at trial estimated the dog was "maybe a year [old] at this point."  And although appellant characterizes his dog as "relatively small and immature," Fromer testified the

---

[5] In his reply brief, appellant makes a number of claims about what Exhibit 1 purportedly shows.  He argues it depicts his "backward-leaning posture as the dog approaches the scene of the altercation" and asserts the video contradicts any claim he "rushed toward Fromer when he and the other minor began to fight[.]"  He also claims it shows "body language that indicates he is pulling back on the leash."

In making such claims, appellant invites us to substitute our judgment for that of the juvenile court as to what the surveillance video shows.  As an appellate court, we must decline the invitation.  (See *South Santa Clara Etc. Dist. v. Johnson* (1965) 231 Cal.App.2d 388, 398 [reviewing court may not substitute its deductions for those of trial court as to what photographs depict where two or more inferences reasonably can be drawn from the evidence].)  We have reviewed Exhibit 1, and it suffices for us to say this is not a case in which the video evidence "absolutely refute[s] the conclusion to be drawn from oral testimony[.]"  (*Harmon v. San Joaquin L & P Corp.* (1940) 37 Cal.App.2d 169, 173.)  The surveillance video created at most a conflict in the evidence, and we cannot say the inferences the juvenile court drew from it are not based on substantial evidence. (See *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1149-1150 [although videotape did not show defendant's employee distributing flyers, jury could infer he did so from video showing he participated in demonstration and had flyers in his possession].)

dog was a "big p[i]t bull," and the juvenile court was able to judge the size of the dog at the time of the attack by looking at Exhibit 1.

Ultimately, whether the dog was of sufficient size and strength to be capable of inflicting great bodily injury is a question of fact. (*Nealis, supra,* 232 Cal.App.3d Supp. at p. 4.) We must therefore defer to the juvenile court's findings on this point. (*Henderson, supra,* 76 Cal.App.4th at p. 466.) Moreover, while it might have been good practice for the petitioner to have introduced the type of evidence appellant now demands, "such evidence is not essential to establish the deadly nature of the weapon[.]" (*Brown, supra,* 210 Cal.App.4th at p. 8 [the People did not need to introduce evidence concerning nature of BB gun and its ability to inflict substantial injury].)

Finally, the mere fact that Fromer did not suffer any particularly serious injury is not dispositive. Section 245(a)(1) "speaks to the *capability* of inflicting significant injury[.]" (*Brown, supra,* 210 Cal.App.4th at p. 7, italics added.) If injury does result, however, "the nature of such injuries and their location are relevant facts for consideration in determining whether an object was used in a manner capable of producing and likely to produce great bodily injury." (*Ibid*.) In this case, Fromer raised his arm to protect himself from being bitten, and the dog's bite inflicted what appears to have been a superficial wound. But the juvenile court "could have reasonably inferred the location and severity" of Fromer's injury "were fortuitous[.]" (*Id.* at p. 8.) Fromer was attacked by the dog while he was on the ground, and he just as easily could have suffered a far more serious injury. (*Ibid*.) Contrary to appellant's suggestion, the nature of Fromer's injury in no way "negates a reasonable inference" the dog was used as a deadly weapon.

II. *Appellant Was Not Found Guilty of an Uncharged Offense.*

Appellant raises a second challenge to the true finding on Count II of the petition. He contends he was deprived of due process because the juvenile court made findings in excess of its jurisdiction as to uncharged allegations that were not necessarily included in the charged offenses. Specifically, he argues the lower court exceeded its jurisdiction by finding he had committed assault with a deadly weapon with a knife, because assault with

10

a knife was neither explicitly charged in the petition nor necessarily included in the charge of assault with a deadly weapon by means of his pit bull. In appellant's view, the alleged error requires reversal. We disagree.

A. *Appellant Does Not Demonstrate Prejudicial Error.*

At the outset, it is not clear to us how appellant was prejudiced by the alleged error, and he does not explain how he was harmed by it. Count II of the petition charged appellant with the offense of assault with a deadly weapon. The juvenile court sustained that count of the petition, and as explained in the preceding section of this opinion, its findings are supported by substantial evidence. It is true that the weapon with which appellant was alleged to have committed the assault was his pit bull. Nevertheless, the type of weapon used to commit the assault is not an element of the offense under section 245(a)(1). (*People v. Milward* (2011) 52 Cal.4th 580, 587-588.) Appellant could have been convicted of an assault under this provision without a determination of which weapon was used. (*Id*. at p. 588.) He therefore received notice of the offense with which he was charged, and the juvenile court found as a matter of fact he had committed an assault with his dog.

Appellant claims in his reply brief that "he was also found to have committed *additional offenses* of which he was given no advance notice." (Italics added.) We are not told what these *offenses* are, and appellant's arguments are directed solely to the juvenile court's *findings* that appellant committed an assault "with a pit bull and/or with a knife[.]" Having held that appellant was properly convicted of assault with a deadly weapon with his dog, we fail to discern how reversal of the juvenile court's "findings" regarding the knife would have any practical consequence. (See *People v. Chavez* (1968) 268 Cal.App.2d 381, 385-386 [no prejudice to defendant where information sufficiently apprised him of charge of which he was convicted and any variance was immaterial]; cf. *People v. Ramirez* (1987) 189 Cal.App.3d 603, 623-624 [where Court of Appeal concluded appellants had been convicted of uncharged offenses, convictions under § 264.1 were reduced to convictions under § 289, subd. (a)], disapproved on another ground in *People v. Russo* (2001) 25 Cal.4th 1124, 1134.)

11

Appellant contends we must presume he was prejudiced by the petition's failure to allege in Count II that he committed an assault with a knife. He argues that "[n]umerous cases have reversed findings that were based on uncharged allegations." In the cases he cites, however, the defendants were ultimately convicted of *offenses* different from those charged in the criminal pleadings. (*In re Robert G.* (1982) 31 Cal.3d 437, 441, 445 [wardship petition alleging assault under § 245, subd. (a) could not be sustained on basis that minor had committed unalleged battery under § 242]; *People v. Lohbauer* (1981) 29 Cal.3d 364, 368-370 [defendant charged with violation of felony theft under § 459 could not be convicted of misdemeanor of entering non-commercial dwelling under § 602.5]; *In re Roy C.* (1985) 169 Cal.App.3d 912, 914-915 [petition alleged minor had violated §§ 211 (robbery) and 242 (battery), but court sustained allegation under § 245, subd. (a)].) Since this is not "a case in which the defendant was convicted of a crime *not charged* in the accusatory pleading" (*People v. Thomas* (1987) 43 Cal.3d 818, 830), "even if the accusatory pleading was defective, [appellant] has not demonstrated he was misled to his prejudice and reversal is therefore inappropriate in this case." (*Id.* at p. 832.)

B.      *Appellant Fails to Show He Was Misled by the Allegations of the Petition.*

In a related argument, appellant contends he received no notice that he could be found guilty of assault by means of force. This argument cannot be sustained on the record before us.

Initially, we observe that in making this argument, appellant contradicts himself. On the one hand, his *opening* brief claims that assault by use of a deadly weapon and assault by means of force are distinct offenses, but he received no notice he might be tried and convicted of the latter. On the other hand, his *reply* brief states that the petition's inclusion of an allegation under section 1192.7, subdivision (c)(23) "*necessarily excluded* assault by means of force." (Italics added.) If this allegation in the petition "necessarily excluded" the offense of which appellant now claims he had no notice, it is difficult to understand how his counsel could possibly have been misled as to the nature of the crime with which he was charged.

12

Moreover, under the version of section 245(a)(1) in effect at the time of the crime, trial, and disposition, there was a "fundamental identity of the concepts of assault with a deadly weapon and assault by means of force likely to produce great bodily injury."[6] (*Aguilar, supra,* 16 Cal.4th at p. 1036; see *In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5 ["assault by means of force likely to produce great bodily injury is not an offense separate from . . . assault with a deadly weapon"].)  Even if we ignore appellant's inherently contradictory reading of the petition, the identity of the two offenses would make any variance between the petition and the trial court's findings immaterial.  (*People v. Chavez, supra,* 268 Cal.App.2d at p. 386.)

For these reasons, we reject appellant's contention.

DISPOSITION

The judgment is affirmed.

Jones, P.J.

We concur:

Needham, J.

Bruiniers, J.

---

[6] Appellant claims the recent amendment of section 245 demonstrates that *Aguilar* and *In re Mosley* were incorrect in holding that assault with a deadly weapon and assault by means of force likely to produce great bodily injury were one and the same offense.  The interpretation of statutes is an exercise of judicial power the Constitution assigns to the courts, not the Legislature, and the latter body's amendment of a statute does not operate to invalidate the California Supreme Court's interpretation of the earlier version of the statute.  (See *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922.) In addition, amendments to penal statutes are not retroactive unless expressly so declared (§ 3), and we could not predicate a finding of error on the juvenile court's adherence to the then-binding interpretation of the California Supreme Court.

13