Filed 11/24/20  P. v. Suy CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SOKHAN SUY,<br><br>    Defendant and Appellant. | F078492<br><br>(Super. Ct. No. 1464984)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Scott T. Steffen, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Defendant Sokhan Suy stands convicted, following a jury trial, of assault with a firearm, during the commission of which the jury found defendant personally used a firearm and personally inflicted great bodily injury (GBI) upon the victim (Pen. Code, §§ 245, subd. (a)(2), 12022.5, subd. (a) (section or § 12022.5(a)), 12022.7, subd. (a) (section or § 12022.7(a)) (count I),[1] and being a felon in possession of a firearm (§ 29800, subd. (a)(1)) (count II).

Defendant was sentenced to the middle term of three years on count I for assault with a firearm (§ 245, subd. (a)(2)), which was doubled under the "Three Strikes" law (§§ 667, subds. (b)–(i)), 1170.12, subds. (a)–(d)) for a prior serious felony conviction (§ 667, subd. (d)), and five additional years were added for the prior strike (§ 667, subd. (a)), to be served consecutively. The sentence on count I was enhanced by four years under section 12022.5(a), for personal use of a firearm, and enhanced by an additional three years under section 12022.7(a), for personal infliction of GBI, each to be served consecutively. As to count II, defendant was sentenced to the middle term of two years (§§ 18, 29800, subd. (a)(1)), which was stayed under section 654. Finally, defendant was ordered to pay various assessments and fines, including a restitution fine of $300, a court assessment fee of $40, and a conviction assessment fee of $30.

On appeal, defendant claims (1) the trial court erred in failing to address his request at sentencing to discharge his retained counsel so that a motion for a new trial could be filed; (2) he was not given adequate notice of the enhancement under section 12022.7(a), which assertedly violated his due process rights; and (3) pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the trial court's imposition of various fines and fees violated defendant's rights to due process and equal protection. The People dispute defendant is entitled to any relief.

---

[1] All further statutory references are to the Penal Code unless indicated otherwise.

We conclude defendant did not have sufficient notice of the enhancement imposed under section 12022.7(a) and this enhancement must be stricken. As resentencing is required, we do not reach the merits of defendant's additional assertions of error which may be addressed by the trial court in the first instance upon remand.

## FACTUAL SUMMARY

Sokny Suy[2] is defendant's younger brother. In September 2013, Jeremy M. was living at Sokny's house in Modesto, along with "Puff" and "X." Sokny was growing marijuana at the house, and his friend Jeremy was expected to watch over the crop. Defendant would visit Sokny's house, but he did not live there. Defendant had brought a gun to the house days before the shooting and had given it to Sokny.

Jeremy had known defendant since he was 10 or 11 years old, and they had never had any issues before. But in the weeks before the shooting, defendant had asked Jeremy where the mother of his child was and where the child was, but Jeremy did not know what he was talking about. Defendant accused Jeremy of having something to do with defendant's inability to locate them.

On the morning of September 25, 2013, after having stayed up all night, and having smoked methamphetamine and marijuana, Jeremy was hanging marijuana up to dry. Defendant, who had also been using drugs, was in the living room and sitting on the couch looking at the floor. Also in the house were Sokny, Kanal, and a girl named Daisy; Kanal and Daisy were in the kitchen that morning when the shooting occurred. Jeremy asked defendant if everything was all right, but defendant did not respond. Jeremy moved from the kitchen to the backyard, and something caught his attention. He turned, felt something hit his face, and saw defendant with a gun, but Jeremy did not know if that was the same gun he had seen defendant give to Sokny. Although he was not looking at

---

[2] Because defendant and Sokny share the same last name, Sokny Suy will be referred to by his first name.

3.

defendant immediately before being shot, he concluded that defendant fired the gun at him because defendant was there holding a gun with his arm pointed straight out. After he was shot, Jeremy ran and jumped over the back fence, walked down the street, saw two people sitting in a truck, and asked for help.

Once at the hospital, he talked with the police and said it was defendant who shot him on the right side of his face. Jeremy testified he lied to subsequent defense investigators by telling them defendant did not shoot him and that he did not know who did. Jeremy also told a defense investigator it was possible someone was fooling around with the gun and it went off and shot him. Jeremy explained he lied to defense investigators because defendant was his childhood friend, and Jeremy was trying to be a good friend, but he did not know why defendant tried to kill him.

Jeremy was hospitalized for a week for the treatment of his shattered jaw, and he had to wear a metal device around his head for two or three months. He still cannot chew on the right side of his mouth.

The investigating officer, David Angarole, interviewed Sokny after the shooting. Sokny's initial account was that there were several people in the house when he heard gunshots, but he did not see what happened. He thought the person who did the shooting was someone named Red. At some point during the interview, however, Sokny changed his story and said defendant shot Jeremy. Angarole later interviewed Jeremy, who said that defendant shot him. Angarole also interviewed Daisy, who said she was in Sokny's vehicle in the driveway when she heard popping sounds, and then she saw defendant exiting the house from the front door.

At trial, Sokny testified that four people were living in the house at the time of the shooting—Sokny, Jeremy, Puff and X. Sokny heard gunshots that woke him on September 25, 2013, but he did not see anyone in the house when he looked around. Although he had told the police he had seen defendant holding a gun that morning, he testified that was a lie. He explained that officers were accusing him of being the

shooter, so he made up a detailed story about defendant being the shooter. Sokny also testified he lied to the police because there were a lot of people in the house that morning, some of whom were taking drugs. He thought the police were going to hold him for a long period of time, and he wanted to get out of the interview to tend to his plants and prevent the police from confiscating the marijuana.

Sokny explained on the day of the shooting at least 13 or 14 people had been at the house smoking methamphetamine and heroin. He testified the gun had been in the house a few days prior to the shooting, it was in the living room under the sofa, and everyone had access to it. He had not seen defendant with the firearm the day of the shooting, although he had seen him holding the gun a couple of days before. When he saw defendant with the gun, Sokny took it back and hid it. He did not tell defendant where he had hidden it. He denied seeing defendant in the house when he woke up the morning of the shooting. Sokny admitted on cross-examination that he had no real reason to believe that it was defendant who shot Jeremy.

Daisy testified for the defense. She knew Jeremy and Sokny, and she was present in the house on the morning Jeremy was shot, helping to clean the house because they were moving out. She was in the living room when she heard what she thought were firecrackers; she heard two popping sounds. She never saw defendant handle a gun inside the house, and she did not see him handling a gun immediately after the shooting—she did not see what anyone did. She denied she told officers she saw defendant leaving the house after the shooting. She remembered seeing Jeremy outside after he was shot as she was leaving the house to go home.

Defense investigator Richard Baca also testified for the defense. He explained he had a conversation with Jeremy on the phone about two months prior to trial. Jeremy denied that defendant was the shooter, and Jeremy said he did not know who shot him. One day later, Baca followed-up with another phone call and Jeremy said "'[y]our client shot me'" and then hung up the phone. Baca attempted to call Jeremy back, but Jeremy

did not pick up the phone. Baca left a message for Jeremy to return his call, but Jeremy never did so.

After closing arguments, the jury was instructed on the charged offense of attempted murder and the charged enhancement under section 12022.53, subdivision (d) (section or § 12022.53(d)). The jury was also instructed on the lesser related offense of assault with a firearm and unpleaded enhancements for personal use of a firearm under section 12022.5(a) and for personal infliction of GBI under section 12022.7(a).

The jury found defendant not guilty of attempted murder to which the section 12022.53(d) enhancement applied. The jury found defendant guilty of the lesser related offense of assault with a firearm, and found true the unpleaded enhancement allegations under sections 12022.5(a) and 12022.7(a). The jury also found defendant guilty of being a felon in possession of a firearm, and defendant had already admitted the alleged prior serious felony conviction. Defendant was sentenced to an aggregate term of 18 years, after which defendant filed this appeal.

## DISCUSSION

### I.      Notice of Section 12022.7(a) Enhancement

#### A.      Background

Defendant was charged with attempted murder (§§ 187, 664), and it was alleged that in the commission of the attempted murder, defendant personally and intentionally discharged a firearm and proximately caused GBI (§ 12022.53(d)). On the first day of trial, the parties discussed on the record the possibility of a plea agreement, but determined settlement was unlikely.[3] The prosecutor noted later that "given the way this is charged, this could be a [*sic*] defendant's entitled lesser of [section] 245[, subdivision ](a)(2) with a [section] 12022.5 enhancement. So that's what I expect the jury instructions to be on."

---

[3]      The record also reflects a settlement offer was made and declined prior to March 2016.

Near the close of trial, the court indicated it had discussed jury instructions with the attorneys off the record, and they had reached consensus on all except one related to flight (CALCRIM No. 372).  In the end, the jury was instructed on, among other things, attempted murder, the firearm enhancement under section 12022.53(d), the lesser offense of assault with a firearm and enhancements under section 12022.5(a) and 12022.7(a), which were not pled in the information.

The jury acquitted defendant of attempted murder (§§ 187, 664), and instead found him guilty of the lesser offense of assault with a firearm (§ 245, subd. (a)(2)).  The jury further found true that during the commission of assault with a firearm, defendant personally used a firearm (§ 12022.5(a)), and personally inflicted GBI upon Jeremy (§ 12022.7(a)).[4]

Defendant argues that because the requirements of section 12022.7(a) are not necessarily included within section 12022.53(d), the People's failure to charge section 12022.7(a) or allege facts to support the section 12022.7(a) enhancement in the information violated defendant's due process right to notice of the charges against him.

**B.    Analysis**

As an initial matter, the record does not reflect how the parties reached agreement to instruct the jury on the lesser related offense of assault with a firearm and the enhancement allegations under sections 12022.5(a) and 12022.7(a) as to that lesser offense.  (See *People v. Birks* (1998) 19 Cal.4th 108, 116–137 [the defendant not entitled to instruction on lesser related offense, but parties may agree to instructions on related charges].)  The record suggests the prosecutor may have mistakenly believed section 245, subdivision (a)(2), was a lesser included offense of attempted murder, perhaps because

---

[4]    Section 12022.53(d) does not apply to the felony of assault with a firearm under section 245, subdivision (a)(2), and section 12022.7(a) does not apply to murder or manslaughter or a violation of sections 451 or 452 (arson and unlawfully causing a fire).  (§§ 12022.53, subd. (a), 12022.7, subd. (g).)

the attempted murder charge was pleaded with a section 12022.53(d) enhancement. The agreement as to the instructions and verdict forms was reached off the record by the court and the attorneys, so it is not clear whether the instruction on the offense under section 245, subdivision (a)(2), was agreed to by the parties or mistakenly deemed a lesser included offense for which an instruction was required. In any event, there is also no record whether the instruction conference took place in defendant's presence or whether defendant was given notice of the enhanced sentence he faced if the jury was instructed on the enhancement under section 12022.7(a) and found the allegation true.

While the failure to object before the trial court to insufficient notice of an unpleaded sentence enhancement may result in forfeiture of the issue on appeal (*People v. Houston* (2012) 54 Cal.4th 1186, 1227), an appellate court may decide an otherwise forfeited claim where the trial court has made an error affecting "'an important issue of constitutional law or a substantial right[]'" (*People v. Anderson* (2020) 9 Cal.5th 946, 963, quoting *In re Sheena K* (2007) 40 Cal.4th 875, 887, fn. 7 [concluding it would reach the inadequate notice of enhancements, despite the defendant's failure to object at the time of sentencing]). The People concede defendant's argument in this regard is cognizable on appeal. As explained below, because the error affected substantial rights by depriving defendant of timely notice of the enhancement under section 12022.7(a) and the potential sentence he faced, we exercise our discretion to address the issue on the merits. (See *People v. Butler* (2003) 31 Cal.4th 1119, 1128; *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6; see also *People v. Anderson*, *supra*, at p. 963.)

### 1. Applicable Legal Standards

It is a "preeminent principle that one accused of a crime must be 'informed of the nature and cause of the accusation.' [Citation.] 'It is fundamental that "When a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime. [Citations.] This reasoning rests upon a constitutional basis: 'Due process of law requires that an accused

be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]" [Citation.]' [Citations.] 'No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.'" (*People v. Thomas* (1987) 43 Cal.3d 818, 823.) Moreover, "a defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*People v. Mancebo* (2002) 27 Cal.4th 735, 747.)

"An accusatory pleading stating the charged offense provides the defendant not only with notice of the offense actually charged but also with notice of any necessarily included offenses." (*People v. Tardy* (2003) 112 Cal.App.4th 783, 786.) To determine whether one crime is necessarily included in another, courts apply either the accusatory pleading test or the statutory elements test. (*People v. Shockley* (2013) 58 Cal.4th 400, 404 (*Shockley*); *People v. Robinson* (2016) 63 Cal.4th 200, 207 (*Robinson*).) "'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.'" (*Shockley*, *supra*, at p. 404.)

A reviewing court does not consider the evidence produced at trial when analyzing the relationship of a charged offense and a possible lesser included offense under either the elements or the accusatory pleading test. (*People v. Chaney* (2005) 131 Cal.App.4th 253, 256; see *People v. Ramirez* (2009) 45 Cal.4th 980, 985 ["Under the 'elements' test, we look strictly to the statutory elements, not to the specific facts of a given case."].)

While enhancements are not technically offenses, courts have applied the same lesser-included offense analysis to consider whether a pleaded enhancement provides a criminal defendant adequate notice that a different and unalleged enhancement may be imposed. (*People v. Dixon* (2007) 153 Cal.App.4th 985, 1002 [pleading § 12022.53, subd. (b), enhancement provided the defendant adequate notice the prosecution was seeking to prove elements of the § 12022.2, subd. (b), which was necessarily included]; *In re A.L.* (2015) 233 Cal.App.4th 496, 500–504 [applying accusatory pleading test to conclude § 12022, subd. (a), was necessarily included within § 12022, subd. (b), given the language in the charging document].)

## 2. Due Process Error

The parties dispute whether, under the elements test, defendant was given adequate notice of the uncharged enhancement under section 12022.7(a) as necessarily included within the elements of the charged enhancement under section 12022.53(d).

Defendant was charged with attempted murder with the following enhancement allegation: "During the commission of the above charged offense, defendant personally and intentionally discharged a firearm and proximately caused great bodily injury or death to another person, to wit, Jeremy [M.], in violation of Section 12022.53(d) .…"

"When, as here, the accusatory pleading incorporates the statutory definition of the charged offense without referring to the particular facts, a reviewing court must rely on the statutory elements to determine if there is a lesser included offense." (*Robinson*, *supra*, 63 Cal.4th at p. 207; accord, *Shockley*, *supra*, 58 Cal.4th at p. 404; *People v. Fontenot* (2019) 8 Cal.5th 57, 65.) The question is whether, as a matter of law, the statutory definition of the greater offense *necessarily* includes the lesser offense. (*People v. Parson* (2008) 44 Cal.4th 332, 349.)

To prove the requirements of the firearm enhancement under section 12022.53(d), it must be shown that, during the commission of an offense specified in section 12022.53, subdivision (a), a defendant (1) personally and intentionally discharged a firearm and

(2) proximately caused (3) GBI as defined in section 12022.7, or death (4) to any person other than an accomplice. The enhancement under section 12022.7(a), applies to any person who (1) personally inflicts; (2) GBI; (3) on any person other than an accomplice; (4) in the commission of a felony or attempted felony.

One of the critical differences between the two enhancements is that while section 12022.53(d) applies to those who have *proximately* caused GBI, section 12022.7(a) applies only to those who *personally inflict* GBI. The term "personally inflict" has a distinct legal meaning, which is different from proximate cause. (*People v. Cole* (1982) 31 Cal.3d 568, 572.) In other words, "[p]roximately causing and personally inflicting harm are two different things." (*People v. Bland* (2002) 28 Cal.4th 313, 336.)

A defendant "personally" inflicts GBI if he directly causes the injury—that is, if the defendant "himself" actually "inflicts the injury[]" by "directly perform[ing] the act that causes the physical injury to the victim." (*People v. Cole*, *supra*, 31 Cal.3d at pp. 572, 579; *People v. Modiri* (2006) 39 Cal.4th 481, 495 [requiring a "direct physical link between [the defendant's] own act and the victim's injury[]"].)

Proximate cause is conduct that is a substantial factor contributing to the injury because that conduct set in motion the chain of events that naturally ripened into the injury. (*People v. Bland*, *supra*, 28 Cal.4th at pp. 334–336; *People v. Sanchez* (2001) 26 Cal.4th 834, 845.)

Thus, it is possible for one who personally and intentionally discharges a firearm to proximately cause GBI *without* personally inflicting GBI. For example, if someone personally and intentionally discharges a firearm, which ejects a bullet into a gas can, that in turn creates an explosion, which causes someone present to flee the fire and the noise, which ultimately results in the fleeing person tripping on a crack in a sidewalk one block away and breaking an ankle, the shooter has proximately caused the broken ankle but did not personally inflict the injury. (See *People v. Palmer* (2005) 133 Cal.App.4th 1141,

1151–1153 [§ 12022.53(d) extends to situation where bullet itself does not hit victim, but discharge of firearm is nonetheless the proximate cause of the injury].) (See *People v. Rodriguez* (1999) 69 Cal.App.4th 341, 346, 351 [victim injured after hitting his head while trying to tackle the defendant; the defendant did not personally inflict injury]; *People v. Jackson* (2000) 77 Cal.App.4th 574, 576, 579–580 [victim injured tripping over curb while walking away from the defendant; the defendant did not personally inflict injury].)

The People argue that only if an individual did not personally discharge the firearm could he or she have proximately caused, but not personally inflicted, a gunshot wound. That logic, however, assumes additional facts that the GBI at issue was caused by a bullet wound from the shooter's gun—which are facts deduced from the evidence here, not from the statutory elements of section 12022.53(d) or the information. Because section 12022.7(a) is not necessarily included within section 12022.53(d), defendant did not have adequate notice that he could be subject to an additional three-year penalty under section 12022.7(a).

### 3. Prejudice

Neither party addresses whether this error was prejudicial. We assume the error is subject to harmless error review under *Chapman v. California* (1967) 386 U.S. 18, rather than being a structural error subject to automatic reversal. Defendant clearly suffered prejudice under this standard. The improper enhancement added three years to his sentence. We also cannot conclude beyond a reasonable doubt the lack of notice had no effect on defendant's decision to accept or negotiate a plea offer. As the information did not provide defendant notice that he could be subject to the three-year GBI enhancement under section 12022.7(a), defendant did not have the information needed to make an informed decision. (*People v. Wilford* (2017) 12 Cal.App.5th 827, 840.) The three-year enhancement under section 12022.7(a) must be stricken, the sentence vacated, and the matter shall be remanded for resentencing.

## II.    Remaining Issues

### A.    Sixth Amendment Right to Counsel and Motion for New Trial

Defendant contends that, after the trial court made the oral pronouncement of sentence, defendant requested a new trial and asked that his retained counsel be discharged.  Defendant maintains the trial court failed to understand and exercise its discretion to discharge defendant's retained attorney, appoint him counsel, and allow him to file a motion for a new trial.  To the extent defendant's request to discharge his counsel was unclear, defendant argues the court should have questioned him.

Defendant's request was made at the close of the sentencing hearing, which was prepared in writing and read by his attorney.[5]  The note was read as follows:  "I would like to say I must appeal the jury decision, Number 1.  [¶] … [¶]  Number 2, there were multiple issues not raised in court and additional in limine motions never filed on my behalf.  [¶]  Number 3, and I am now declaring under California Rules of Court and penalty of perjury that I am an indigent defendant and cannot afford an attorney from this point forward.  My family was gracious to provide me with the attorney, but I do not have the ability to pay for any attorney, and I [would] like to ask the Court [to] provide me with the trial transcripts with what has—with that being said, the defendant would like to file a motion for new trial to appeal the conviction."

The trial court stated it was puzzled over the reference to a motion for a new trial. The prosecutor argued defendant had retained counsel who had the authority to determine whether or not to file a motion for a new trial.  Defense counsel responded that he had been as "careful as possible[,]" he "made ever technical objection[,]" and he "tried to make this … as bulletproof as possible."  Defense counsel stated he had advised his client he thought they were handicapped by certain testimony from his family, and concluded

---

[5]    An interpreter read the first few sentences to the court, but because it was written in English, defendant's attorney took over reading the statement to the court.

he did not see "any merit in the in limine motions" nor did he "see any merit in any other item for a new trial." The court asked no further questions, but told defendant he would have an appointed attorney for appeal.

As this matter will be remanded for resentencing, it is unnecessary for us to reach defendant's arguments as to his alleged request to discharge his retained counsel and appoint new counsel for the purpose of filing a motion for a new trial. Neither purported error in the posttrial context entitles defendant to an automatic retrial. (See *People v. Braxton* (2004) 34 Cal.4th 798, 818–819 [inadequate appellate record to determine whether motion for a new trial should have been granted requires remand for a belated hearing on new trial motion].) The record is inadequate to determine the prejudicial effect of any error in failing to appoint counsel for the purpose of filing a motion for a new trial. Defendant is entitled to the appointment of counsel upon remand, and defendant shall have the option to file a new trial motion prior to resentencing. (See *People v. Hales* (1966) 244 Cal.App.2d 507, 511 ["If the judgment is vacated or set aside, the motion for a new trial may then be entertained."].)

**B.** *Dueñas* **Claim**

The trial court imposed a $300 restitution fine under section 1202.4, subdivision (b)(1), and the court also imposed a corresponding parole revocation fine (§ 1202.45) in the same amount, which was stayed, a $40 court operations assessment (§ 1465.8, subd. (a)(1)), and a $30 criminal conviction assessment (Gov. Code, § 70373).

Relying on *Dueñas*, *supra*, 30 Cal.App.5th 1157, which was issued while this appeal was pending, defendant contends his fees and fines should be stayed or stricken. Moreover, because the trial court has already indicated defendant "is going to have very little ability to pay," defendant argues nothing will be accomplished by remanding for an ability-to-pay hearing. Defendant asserts the restitution fine should be stayed permanently, and the other fees stricken.

In *Dueñas*, the court held the assessments under Penal Code section 1465.8 and Government Code section 70373 may be "imposed only on those with the means to pay them[]" (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1168–1169), and "that although the trial court is required by … section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay" (*id.* at p. 1172).

We conclude it is unnecessary to reach defendant's *Dueñas* arguments given remand of this matter for resentencing, despite defendant's urging remand will "accomplish nothing." As defendant noted, the probation report has no information about defendant's work history, and no evidence of defendant's inability to pay is present in the record. When the trial court stated a "guess" that defendant would have very little ability to pay, it was in reference to an amount over the minimum restitution fine and was based only on an assumption.[6] Defendant may address his inability-to-pay assertion pursuant to *Dueñas* with the trial court in the first instance.

---

[6]    In discussing a $900 sentencing report fee, the prosecutor noted defendant had a probable inability to pay that amount. However, this statement did not establish defendant had no present or future ability to pay the $300 restitution fine. (§ 1202.4, subd. (d) ["Consideration of a defendant's inability to pay may include his or her future earning capacity."].)

15.

## DISPOSITION

The three-year enhancement under section 12022.7(a) is stricken. The sentence is vacated and the matter is remanded to the trial court with directions to resentence defendant in accordance with this opinion. Should defendant choose to do so, he may bring a motion for a new trial, but must do so prior to resentencing.


MEEHAN, J.

WE CONCUR:


PEÑA, Acting P.J.


DeSANTOS, J.